54 F.3d 1488
 19 Employee Benefits Cas. 1283, Pens. Plan Guide P 23912X
Reuben A. MAEZ, Linnea K. Maestas, Janet M. Cowdrey, Paul
Spieker, Individually and as Representatives of a
Class, Plaintiffs-Appellants,
v.
MOUNTAIN STATES TELEPHONE AND TELEGRAPH, INC. d/b/a U.S.
West Communications, Inc., a Colorado corporation; Enhanced
Management Transition Program; Enhanced Management
Transition Program Review Committee; Neal Greenhalgh; Fred
L. Cook; A. Gary Ames; U.S. West, Inc., a Colorado
corporation; U.S. West Management Pension Plan Employee
Benefit Committee; John G. Shea, Defendants-Appellees.
 No. 93-1184.
 United States Court of Appeals,
Tenth Circuit.
 April 19, 1995.
 
 1
 Andrew T. Brake of Andrew T. Brake, P.C., (Lee Thomas Judd (with him on the brief) of Andrew T. Brake, P.C., Eugene Deikman (with him on the brief) of Eugene Deikman, P.C., and William D. Peterson (with him on the brief) of William D. Peterson, P.C., Denver, CO), for plaintiffs-appellants.
 
 
 2
 D. Ward Kallstrom of Lillick & Charles, San Francisco, CA (Dirk W. de Roos (with him on the brief) of Faegre & Benson, and Leon Marks (with him on the brief) of U.S. WEST, Inc., Denver, CO), for defendants-appellees.
 
 
 3
 Before SEYMOUR, Chief Judge, McKAY, Circuit Judge, and BELOT,* District Judge.
 
 
 4
 BELOT, District Judge.
 
 
 5
 Plaintiffs/appellants appeal the dismissal of state law and ERISA claims by Judge Daniel B. Sparr of the United States District Court for the District of Colorado. The claims and allegations in these consolidated cases are similar to those made against defendants/appellees US WEST Management Pension Plan and John G. Shea in Averhart v. US WEST Management Pension Plan (No. 92-1317), Sandquist v. US WEST Management Pension Plan (No. 92-1321), and Sabell v. US WEST Management Pension Plan (No. 92-1375), three cases which were also decided by Judge Sparr. A separate panel of this court recently affirmed Judge Sparr's grant of summary judgment for the defendants in those cases. Averhart v. US WEST Management Pension Plan, 46 F.3d 1480 (10th Cir.1994), reh'g denied (10th Cir. Feb. 21, 1995).
 
 
 6
 * Defendant Mountain States Telephone & Telegraph, Inc. ("Mountain Bell") is a former subsidiary of defendant US WEST Communications, Inc. ("US WEST"), a regional holding company formed after the court-ordered divestiture of AT & T. Plaintiffs were formerly employed as managers at Mountain Bell and participated in US WEST's Management Pension Plan.
 
 
 7
 In January 1987, US WEST sought to reduce its work force by offering its managers a severance pay plan called the "Enhanced Management Transition Program" or EMTP. EMTP was designed to encourage voluntary termination or early retirement and operated as an unfunded welfare benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Secs. 1001 et seq. An Employee Benefits Committee ("EBC") was established to administer the program.
 
 
 8
 The EMTP offer consisted of two options: (1) immediate separation and one year's salary in severance pay; or (2) a three year leave of absence, with employee benefits, followed by separation and severance pay equal to fifty percent of one year's salary. On February 12, 1987, defendant A. Gary Ames, Mountain Bell's executive vice president, issued a "management bulletin" urging Mountain Bell managers to "consider our incentive offer carefully." Plaintiffs' App. at 9. Ames stated that Mountain Bell would be "lean, effective and market-driven" in the future and that anyone uncertain about being a part of that future should carefully consider accepting termination under EMTP. Id. Ames further stated that, in the future, "[i]f we have more employees than we need to staff the market units, and if normal attrition won't correct this force imbalance, we may offer incentives for people to leave voluntarily. But those payments will amount to no more than six months' salary." Id. Portions of Ames's comments were published in an article in the February 18, 1987 issue of the MB Times, an in-house newsletter distributed to Mountain Bell employees. Plaintiffs' App. at 11. Plaintiffs Maez, Maestas, and Spieker eventually decided to accept immediate separation from service under EMTP option (1). Plaintiff Cowdrey took a leave of absence under option (2).
 
 
 9
 In April 1989, US WEST implemented a voluntary severance program to reduce the number of director-level employees in the company. This program, called the Director's Program, offered certain director-level employees a choice of various severance pay options if they elected to retire or resign during 1989. This program was not available to managers like plaintiffs. Averhart v. US WEST Management Pension Plan, 46 F.3d 1480, 1483 (10th Cir.1994).
 
 
 10
 On November 29, 1989, after plaintiffs had accepted termination under EMTP, the US WEST Board of Directors adopted a resolution authorizing the EBC to amend the Pension Plan, effective January 1, 1990, to provide certain special pension benefits to eligible employees who would elect between January 2 and January 31, 1990, to retire as of February 28, 1990. This amendment to the Pension Plan, known as the "5 + 5 amendment," provided for a "Minimum Benefit" of adding five years of age and five years of service to participants with five or more years of employment as of February 28, 1990 for purposes of calculating their pension benefits. Eligibility was generally limited to "active employee[s] on the payroll as of February 28, 1990, with five or more years of term of employment as of February 28, 1990." However, director-level employees who terminated during 1989 pursuant to the Director's Program also were permitted to take advantage of the 5 + 5 amendment. Averhart, 46 F.3d at 1483.
 
 
 11
 Although plaintiffs had already accepted termination under EMTP, they submitted claims for benefits under the 5 + 5 amendment. Their claims were denied. The Secretary of the EBC, defendant John G. Shea, determined that plaintiffs were ineligible for the benefits of the 5 + 5 amendment because they were not "active employees."
 
 II
 
 12
 A somewhat detailed explanation of the tortured history of this case is necessary to place the issues in proper focus.
 
 
 13
 On April 9, 1990, plaintiffs filed a class action lawsuit against Mountain Bell in Colorado state court, specifically, the District Court for the City and County of Denver. Plaintiffs' App. at 1-8. Plaintiffs' complaint set forth state law claims of promissory estoppel predicated on allegations that plaintiffs were wrongfully induced to participate in EMTP and wrongfully denied 5 + 5 benefits. On May 3, Mountain Bell removed the state court action to federal court, asserting that plaintiffs' state law claims were preempted by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Secs. 1001 et seq. Plaintiffs' App. at 12-15. The case was assigned to Judge Matsch of the United States District Court for the District of Colorado.
 
 
 14
 On May 21, 1990, Mountain Bell moved to dismiss the removed action on Rule 12(b)(6) grounds. Plaintiffs' App. at 28-31. Plaintiffs in turn moved to remand the action back to state court, contending that there was no ERISA preemption. Plaintiffs' App. at 32-35. Without undertaking to decide the preemption issues or the propriety of removal jurisdiction himself, Judge Matsch ordered that the case be remanded because the preemption issue was "not free from doubt" and needed to be addressed "as an affirmative defense to plaintiffs' complaint." Plaintiffs' App. at 78-79. Mountain Bell then petitioned this court for a writ of mandamus directing Judge Matsch to vacate his order of remand. Plaintiffs' App. at 81-103. This court dismissed Mountain Bell's petition on June 28, 1991, concluding that Judge Matsch's remand decision was not reviewable and that Judge Matsch had appropriately remanded the case pursuant to 28 U.S.C. Sec. 1447(c): "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Plaintiffs' App. at 104-05.
 
 
 15
 Following remand to state court, plaintiffs moved for leave to file a "first amended complaint," and the state court granted the motion. Defendants' Supp.App. at 1-13; Plaintiffs' App. at 106-113. Mountain Bell moved to dismiss the "first amended complaint," asking the state court to decide the issue of ERISA preemption. Plaintiffs' App. at 114-17. On November 29, 1991, while defendants' motion to dismiss was still under advisement, plaintiffs filed a motion to further amend their first amended complaint. Plaintiffs' App. at 159-61. On the same day, plaintiffs also filed a second, entirely separate lawsuit in federal court against Mountain Bell, US WEST, US WEST Management Pension Plan and the other defendants listed in the caption above. Plaintiffs' App. at 175-84. As a preface to their complaint in this second lawsuit, plaintiffs stated:This action is being filed for purposes of setting forth Plaintiffs' alternative claims, based upon the Employee Retirement Income Security Act of 1974 ... as alternative claims to Plaintiffs' state law claims, as postured in Civil Action No. 90 CV 3927, District Court for the City and County of Denver, which the Defendant therein is alleging are preempted by ERISA.
 
 
 16
 Id. at 175. The federal case was assigned to Judge Sparr.
 
 
 17
 On December 26, 1991, the state court held that plaintiffs' state law claims were preempted by ERISA (Plaintiffs' App. at 185-87), and, on January 2, 1992, Mountain Bell filed another notice of removal to federal court (Plaintiffs' App. at 188-92). Upon removal, plaintiffs' initial lawsuit was also assigned to Judge Sparr.
 
 
 18
 Plaintiffs filed motions in both state and federal court requesting reconsideration of the state court's ERISA preemption decision. Plaintiffs' App. at 209-232. The state court found that the case had already been removed to federal court and that it would be inappropriate to entertain plaintiffs' motion to reconsider without a remand order from the federal court. Plaintiffs' App. at 283. Judge Sparr took the matter under advisement.
 
 
 19
 After removal, defendants requested that the two cases filed by plaintiffs--the first lawsuit initiated in state court (case number 92-S-0009) and the second lawsuit initiated in federal court (case number 91-S-2095)--be consolidated. Defendants' Supp.App. at 13-18. On February 6, 1992, Judge Sparr held a status conference regarding the two cases and ordered that the actions would be "consolidated subject to plaintiff filing [a] first amended complaint in 91-2095 and defendants answering." Plaintiffs' App. at 284-87. Judge Sparr also denied plaintiffs' motion to reconsider the state court's ERISA preemption decision. Id. at 287.
 
 
 20
 During the February 6 status conference, Judge Sparr also "disclosed [his] acquaintance w/ [defendant] Fred Cook & other [Mountain Bell] employees." Id. at 285. Judge Sparr indicated that he had been an employee of defendant Mountain Bell from 1955 through the early 1960s, prior to Mountain Bell's becoming a subsidiary of US WEST, and that, after becoming an attorney, he had served one year as part of Mountain Bell's in-house legal staff. Defendants' Supp.App. at 200-01. Judge Sparr stated that he was familiar with Fred Cook and his wife through business associations dating back twenty years and that he had a professional acquaintance with Mountain Bell's general counsel. See id. at 212.
 
 
 21
 On February 26, plaintiffs in the present case filed a motion to recuse based on Judge Sparr's revelations during the February 6 status conference. Plaintiffs' App. at 464-69. Judge Sparr made similar revelations to the plaintiffs in Averhart, Sandquist, and Sabell, but those plaintiffs did not request recusal. Defendants' Supp.App. at 207. Judge Sparr held a hearing on the recusal issue on March 17. Defendants' Supp.App. at 197-221; Plaintiffs' App. at 474. Counsel for plaintiffs in Averhart, Sandquist, and Sabell appeared and stated that "we do not see under the disclosures made ... any sort of an appearance of impartiality." Defendants' Supp.App. at 210. After "very carefully consider[ing]" plaintiffs' motion in the present case, Judge Sparr found "that there would not be sufficient indication here of any potential bias or prejudice to give a reasonable person a concern that this judge might be biased or prejudiced with respect to claims of any of the parties or counsel." Id. at 218, 220.
 
 
 22
 On March 24, 1992, plaintiffs filed their amended complaint in case number 91-S-2095 (Plaintiffs' App. at 308-22) and sought leave to file a "third amended complaint" in case number 92-S-0009 (Plaintiffs' App. at 294-307). On April 15, defendants filed a motion to dismiss, to strike, and for a more definite statement, arguing inter alia that plaintiffs had ignored Judge Sparr's consolidation order and submitted two new complaints in an attempt to recast the litigation as two expanded lawsuits. Plaintiffs' App. at 323-34. On May 21, Judge Sparr issued an order (1) officially granting defendants' motion to consolidate cases 91-S-2095 and 92-S-0009; (2) denying plaintiffs' motion to amend their complaint in 92-S-0009 because it sought "to relitigate claims already found to be preempted by ERISA"; (3) declaring the amended complaint filed in 91-S-2095 "the controlling document in this matter"; and (4) setting a date for a hearing on defendants' April 15 motion to dismiss. Plaintiffs' App. at 335-37. Plaintiffs attempted to appeal Judge Sparr's denial of their motion to amend, filing a "protective notice of appeal" with this court on June 19. Defendants' Supp.App. at 45-46. This court found that Judge Sparr's May 21 order was "not immediately appealable under 28 U.S.C. Sec. 1291." Defendants' Supp.App. at 77-78.
 
 
 23
 On September 4, 1992, plaintiffs moved for leave to file yet another amended complaint entitled "first amended complaint after consolidation" in Civil Action No. 91-S-2095 (Consolidated with 92-S-0009). Defendants' Supp.App. at 73-76; Plaintiffs' App. at 401-36. This proposed amended complaint set forth ten different claims for relief under ERISA.[1] Plaintiffs alleged that their acceptance of EMTP was predicated on defendants' representations that EMTP was the best severance package that would be offered and that, if they did not accept it, changes in operations could result in lack of promotions, demotions, pay-cuts, transfers and terminations. Plaintiffs' App. at 405-06, p 11. Plaintiffs claimed, inter alia, that defendants' misrepresentations constituted a breach of fiduciary duty in violation of section 404 of ERISA and resulted in a constructive termination in violation of ERISA section 510. Plaintiffs' App. at 424-428.
 
 
 24
 Counsel appeared before Judge Sparr on September 9 to argue defendants' April 15 motion to dismiss, but Judge Sparr was forced to focus instead on plaintiffs' newly proposed amended complaint. Plaintiffs' App. at 365-87. After considerable discussion, Judge Sparr granted plaintiffs' leave to file their "first amended complaint after consolidation" and directed counsel to proceed with the case based on the claims articulated therein. Id. at 384.
 
 
 25
 On September 17, 1992, Judge Sparr granted a motion for summary judgment for defendants US WEST Management Pension Plan and John G. Shea in Averhart and Sandquist. Among other things, Judge Sparr held that ERISA preempted the plaintiffs' state law claims of promissory estoppel. Plaintiffs' App. at 388-400; Sandquist, CIV.A. Nos. 91-S-0028, 91-S-0727, 1992 WL 469739 at * 3 (D.Colo. Sept. 17, 1992). Judge Sparr relied upon this court's previous rulings that " 'ERISA's express requirement that the written terms of a benefit plan shall govern forecloses the argument that Congress intended for ERISA to incorporate state law notions of promissory estoppel.' " Id. (quoting Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1050 (10th Cir.1991), which cites Straub v. Western Union Telegraph Co., 851 F.2d 1262, 1265-66 (10th Cir.1988)). For similar reasons, Judge Sparr also granted defendant US WEST Management Pension Plan's motion for summary judgment in Sabell. Defendants' Supp.App. at 107-20; Sabell, CIV.A. No. 91-S-2086, 1992 WL 469776 at * 3 (D.Colo. Nov. 9, 1992).
 
 
 26
 On October 2, 1992, defendants in the present case filed a motion to dismiss the "first amended complaint after consolidation" in Civil Action No. 91-S-2095 (Consolidated with 92-S-0009).[2] Plaintiffs' App. at 338-64. Plaintiffs filed a response on October 23. Defendants' Supp.App. at 284-324. The motion to dismiss was referred to Magistrate Judge Donald Abram pursuant to 28 U.S.C. Sec. 636(b)(1)(B), and, on March 15, 1993, he issued a recommendation that the motion be granted. Plaintiffs' App. at 437-58. Judge Abram separately examined each of plaintiffs' ten claims for relief and found that each of them was subject to dismissal. Judge Abram noted that plaintiffs' complaint was "poorly plead by intermixing legal theories and claims within separate claims for relief," that it "fail[ed] to specify what legal theories or claims apply as to each defendant," and that some of the claims for relief were "contradictory." Plaintiffs' App. at 439.
 
 
 27
 Plaintiffs filed objections to Judge Abram's recommendation on March 25, 1993, and defendants responded. Defendants' Supp.App. at 126-60. In an order dated April 26, 1993, Judge Sparr dismissed the case with prejudice. Plaintiffs' App. at 459-63. Judge Sparr agreed with Judge Abram's analysis of plaintiffs' ten claims for relief and chastised plaintiffs for "continually fail[ing] to address the ubiquitous deficiencies in their complaint" and "continually attempt[ing] to assert state law claims despite the fact that ERISA has been determined to preempt their state law claims." Id. at 461.
 
 
 28
 In this appeal, plaintiffs challenge Judge Abram's recommendation and Judge Sparr's order regarding dismissal. Plaintiffs also challenge Judge Sparr's denial of their recusal request. Finally, plaintiffs challenge the Colorado state court's December 1991 ruling that plaintiffs' state law claims are preempted by ERISA as well as Judge Sparr's denial of their motion to reconsider that order and to amend their complaint in case number 92-S-0009. See Plaintiffs' Notice of Appeal.
 
 III
 
 29
 * Appellate Jurisdiction Issues
 
 
 30
 Defendants contend that this court does not have jurisdiction to review the state court's ERISA preemption decision which led to the removal of this case to federal court.[3] We disagree.
 
 
 31
 First, as a general rule, the prejudgment findings of a state court made prior to removal are merged into the final judgment and may be reviewed on appeal irrespective of whether the federal district court reexamined the decision after removal. Resolution Trust Corp. v. Nernberg, 3 F.3d 62, 67-68 (3d Cir.1993); Reilly v. Waukesha County, Wisconsin, 993 F.2d 1284, 1287 (7th Cir.1993).
 
 
 32
 Second, the state court was not the only court to make rulings concerning the preemption and removal issues. Judge Sparr reexamined the issues in denying plaintiffs' motion to reconsider. Plaintiffs' App. at 287. The ERISA preemption matter also arose in connection with plaintiffs' motion to amend their complaint and defendants' motion to dismiss.
 
 
 33
 Third, the federal district court's subject matter jurisdiction over plaintiffs' original action, and hence our jurisdiction, depended upon whether there was preemption under ERISA. As previously noted in connection with this case, 28 U.S.C. Sec. 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." (emphasis added). Federal Rule of Civil Procedure 12(h)(3) further directs that "[w]henever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (emphasis added). The ERISA preemption matter is clearly, therefore, a matter with which we should be concerned.
 
 
 34
 Finally, this court recently reversed the denial of a motion to remand because the denial was predicated on an erroneous ERISA preemption finding in Joos v. Intermountain Health Care, Inc., 25 F.3d 915, 917 (10th Cir.1994). Although the ERISA preemption issue in that case was decided solely by the federal district court, this case should not be treated differently simply because the federal district court relied on the findings of the state court.
 
 
 35
 Having concluded that we have reviewing authority, we now turn to the question of whether the lower courts' ERISA preemption findings should be overturned. Congress "expressly included a broadly worded pre-emption provision" in ERISA. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). Section 514(a) of ERISA, 29 U.S.C. Sec. 1144(a), provides in pertinent part that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) ... and not exempt under section 1003(b)." (emphasis added). "The key to Sec. 514(a) is found in the words 'relate to.' Congress used those words in their broad sense, rejecting more limited pre-emption language...." Ingersoll-Rand, 498 U.S. at 138, 111 S.Ct. at 482.
 
 
 36
 The state court found that plaintiffs' claims "relate to" an ERISA plan within the meaning of 29 U.S.C. Sec. 1144(a), rendering them preempted. Plaintiffs' App. at 187. The court relied substantially on similarities it perceived between the present case and Lee v. E.I. DuPont de Nemours and Co., 894 F.2d 755 (5th Cir.1990), in which state law claims of fraud and misrepresentation were also found to be preempted under 29 U.S.C. Sec. 1144(a). Id. at 756. Having reviewed Lee, this court finds that it does indeed support the state court's holding that plaintiffs' state law claims are preempted.
 
 
 37
 In recommending dismissal of plaintiffs' final amended complaint, Magistrate Judge Abram found that plaintiffs' claims "relate to an employee benefit plan and are preempted by ERISA." Plaintiffs' App. at 455. Judge Abram cited Judge Sparr's ERISA preemption findings in Sandquist/Averhart and Sabell. Id. On October 28, 1994, a separate panel of this court affirmed those findings. In Averhart v. US WEST Management Pension Plan, 46 F.3d at 1484-86, this court held that ERISA preempts state law promissory estoppel claims virtually identical to the promissory estoppel claims made by plaintiffs in the present case.
 
 
 38
 We likewise hold in the present case that plaintiffs' state law claims are preempted by ERISA and affirm the removal of plaintiffs' first action to federal court and the denial of plaintiffs' motion to amend their complaint.
 
 B
 
 39
 Standard of Review for Rule 12(b)(6) Dismissals
 
 
 40
 Judge Sparr ordered that plaintiffs' action be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because of deficiencies in their final amended complaint. "[T]he sufficiency of a complaint is a question of law which we review de novo." Ayala v. Joy Mfg. Co., 877 F.2d 846, 847 (10th Cir.1989) (quoting Morgan v. City of Rawlins, 792 F.2d 975, 978 (10th Cir.1986)). "We will uphold a dismissal [under Federal Rule of Civil Procedure 12(b)(6) ] only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.2d 1111, 1115 (10th Cir.1991). In performing our review, we accept all well-pleaded allegations as true and construe them in the light most favorable to plaintiffs. Williams v. Meese, 926 F.2d 994, 997 (10th Cir.1991) (citation omitted). We note that " '[t]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.' " Morgan, 792 F.2d at 978 (quoting Auster Oil & Gas Inc. v. Stream, 764 F.2d 381 (5th Cir.1985)).
 
 
 41
 We proceed to review each of plaintiffs' claims for relief in the order that seems most sensible to us.
 
 1. Inadequate remedy under ERISA
 
 42
 In their tenth claim for relief, plaintiffs contend that "ERISA preemption only applies where ERISA has provided an adequate remedy." Plaintiffs' App. at 433, p 68. Plaintiffs maintain that if they are not deemed entitled to relief under ERISA, then they may pursue recovery "under any other law." Id. As support for this proposition, plaintiffs rely upon three cases: Hospice of Metro Denver, Inc. v. Group Health Insurance of Oklahoma, Inc., 944 F.2d 752 (10th Cir.1991); Uselton v. Commercial Lovelace Motor Freight, Inc., 940 F.2d 564 (10th Cir.1991); and Perry v. P*I*E Nationwide, Inc., 872 F.2d 157 (6th Cir.1989), cert. denied, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990). Id.
 
 
 43
 In recommending that plaintiffs' tenth claim for relief be dismissed, Judge Abram found that plaintiffs' pursuit of relief "under any other law" was simply another attempt to relitigate the issue of ERISA preemption. Plaintiffs' App. at 453. Judge Abram relied in part on Judge Sparr's ERISA preemption findings in Sandquist/Averhart and Sabell, which, as noted supra, have since been appealed to this court and affirmed. Judge Abram also analyzed each of the three cases relied upon by plaintiffs, Hospice of Denver, Uselton, and P*I*E, and distinguished them on the basis that the plaintiffs therein, unlike plaintiffs in the present case, were not seeking benefits under an ERISA plan. Id. at 453-55. In his order of dismissal, Judge Sparr agreed with Judge Abram's analysis and added, in a rather proficient use of common sense, that "just because Plaintiffs are not entitled to relief under ERISA does not mean that they are therefore entitled to relief under state law." Id. at 461.
 
 
 44
 We agree with the rationales set forth by Judges Abram and Sparr and affirm the dismissal of plaintiffs' tenth claim for relief "under any other law."
 
 2. Breach of fiduciary duties
 
 45
 In their second and third claims for relief, plaintiffs attempt to set forth a cause of action for breach of fiduciary duties under section 404(a)(1)(A) and (B) of ERISA, 29 U.S.C. Sec. 1104(a)(1)(A) and (B), which provides:
 
 
 46
 (a) Prudent man standard of care
 
 
 47
 (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
 
 
 48
 (A) for the exclusive purpose of:
 
 
 49
 (i) providing benefits to participants and their beneficiaries; and
 
 
 50
 (ii) defraying reasonable expenses of administering the plan;
 
 
 51
 (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....
 
 
 52
 Plaintiffs allege that defendants US WEST, Cook, Greenhalgh, Ames, EMTP, the EMTP Review Committee, and Mountain Bell breached fiduciary duties and duties of loyalty with respect to EMTP, and that US WEST, the EBC, and Shea breached fiduciary duties or duties of loyalty with respect to the Pension Plan. Plaintiffs' App. at 424-27, pp 45-48. As support for these claims, plaintiffs rely on several paragraphs of allegations in the body of their complaint. Id. The most significant of these is paragraph 16, in which plaintiffs specifically mention defendants' fiduciary duties and duties of loyalty. Id. at 408-09, p 16. Plaintiffs allege that the following acts by defendants induced plaintiffs to accept EMTP:
 
 
 53
 (a) They failed to disclose the fact and scope of Pension Plan overfunding which rendered future enhanced benefits eminently foreseeable for those not accepting EMTP;
 
 
 54
 (b) They failed to disclose U.S. West, Inc. intended to reserve the Pension Plan surplus to finance its own future force reduction objectives rather than to inure to the present benefit of the plan participants;
 
 
 55
 (c) They forestalled written and published force imbalance guidelines which accurately disclosed anticipated force requirements until after Plaintiffs accepted EMTP;
 
 
 56
 (d) They falsely represented that, contrary to traditional policy, termination unrelated to performance could occur unless EMTP was accepted; upon information and belief, no such terminations occurred;
 
 
 57
 (e) They withheld from the Plaintiffs awareness that EMTP's affect on U.S. West, Inc. ['s] long term force reduction and staffing goals would probably be insufficient and, therefore, future better force reduction offers would probably be required;
 
 
 58
 (f) That the Defendants had given serious consideration of future better force reduction offers, including utilization of Pension Plan assets for such purposes;
 
 
 59
 (g) They falsely or recklessly represented that no better early separation incentive offer would follow EMTP and the best future offer would not exceed six month's salary as severance pay; and(h) They falsely represented EMTP was separate from the Pension Plan when it constituted a de facto amendment to the Pension Plan.
 
 
 60
 Id. Plaintiffs assert that by making such misrepresentations and omissions of material facts defendants violated the fiduciary standards in 29 U.S.C. Sec. 1104(a)(1)(A) and (B).
 
 
 61
 Judge Abram recommended that plaintiffs' breach of fiduciary duties claims be dismissed, and Judge Sparr agreed. Judge Abram found that plaintiffs failed to properly allege that defendants were fiduciaries and failed to allege conduct that amounted to a breach of fiduciary duty. Plaintiffs' App. at 441-48.
 
 
 62
 a. Identification of fiduciaries
 
 
 63
 29 U.S.C. Sec. 1002(21)(A) provides in pertinent part:
 
 
 64
 [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 65
 ERISA contemplates the existence of both named and unnamed fiduciaries. A "named fiduciary" is "a fiduciary who is named in the plan instrument, or who ... is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly." 29 U.S.C. Sec. 1102(a)(2).
 
 
 66
 Plaintiffs' allegations with respect to the identification of the defendants as fiduciaries are found at paragraphs 34 through 40 of the complaint. Plaintiffs' App. at 416-18, pp 34-40. Plaintiffs allege that Greenhalgh and Cook were "named fiduciaries" and that Greenhalgh, Cook, and Ames were all three "fiduciaries" because they "exercised discretionary authority or control with respect to the management of EMTP." Id. at pp 35(b) & (c), and 40. Plaintiffs also allege that the EMTP Plan Review Committee and all its members were both "named fiduciaries" and "fiduciaries." Id. at p 36. We must accept these allegations as true and construe them in the light most favorable to plaintiffs. So doing, we find plaintiffs' allegations of defendants' fiduciary status sufficient.
 
 
 67
 b. Conduct amounting to breach of fiduciary duty
 
 
 68
 Judge Abram analyzed each of the paragraphs of allegations in plaintiffs' complaint and concluded that none of the allegations stated a claim for breach of fiduciary duties under 29 U.S.C. Sec. 1132(a)(1)(A) and (B). Judge Abram paid close attention to the allegations of misrepresentations and failures to disclose in paragraph 16 of plaintiffs' complaint, set forth above. Plaintiffs' App. at 443-47. In considering those allegations, Judge Abram examined a number of cases, including Berlin v. Michigan Bell Telephone Co., 858 F.2d 1154 (6th Cir.1988), plaintiffs' primary case authority in support of their breach of fiduciary duties claims. Plaintiffs' App. at 445.
 
 
 69
 The factual scenario and breach of fiduciary duties claims in Berlin are remarkably similar to those in the present case. The plaintiffs were managers at Michigan Bell, another former AT & T subsidiary which was seeking to reduce its number of management-level employees. 858 F.2d at 1156-57. Like Mountain Bell, Michigan Bell developed a severance incentive package designed to encourage voluntary termination or early retirement. Id. at 1157. This package was called the Management Income Protection Plan or "MIPP" and, like EMTP, operated as an unfunded employee welfare benefit plan subject to ERISA. Id. MIPP could be offered to a specific individual or offered generally to a certain category of management-level employees, depending upon where the need for downsizing arose. Id.
 
 
 70
 Michigan Bell made its first general MIPP offering from October 1, 1980 to December 1, 1980. Id. at 1158. Following this offering, there was considerable interest among managers nearing retirement in the possibility of future general MIPP offerings. Id. Because it appeared that some managers were delaying retirement decisions in the hopes of such an offering, Michigan Bell officials made several communications (alleged by plaintiffs to be misrepresentations) regarding the future possibility of an MIPP extension. Id. In a "News for Management Bulletin," Michigan Bell's Vice President of Personnel went so far as to indicate that managers considering retirement should not delay plans in anticipation of another MIPP offering. Subsequently, Michigan Bell extended a second general MIPP offering for those managers retiring between June 1, 1982, and July 31, 1982. Id. at 1159. The plaintiffs, who had retired between the first and second offerings, believed that Michigan Bell had intentionally misled them and induced them into retiring too early by indicating that the original MIPP offering had been a one-time application.[4] Id. at 1158. The plaintiffs filed a class action lawsuit against Michigan Bell and the Vice President of Personnel alleging, inter alia, breach of fiduciary duties under 29 U.S.C. Sec. 1104(a)(1)(A) and (B). Id. at 1160.
 
 
 71
 The district court granted summary judgment in favor of defendants on the breach of fiduciary duties claim. The court found that the decision to offer MIPP benefits a second time was a business decision (i.e., a decision made by Michigan Bell and its Vice President while wearing the businessman's hat, not the fiduciary's hat) and, therefore, that communications or representations relating to that decision were nonfiduciary. Id. at 1162.
 
 
 72
 The Sixth Circuit reversed the district court, finding as follows:
 
 
 73
 Under the exclusion from fiduciary standards for business decisions, corporate actions by plan administrators seeking to reduce the amount of unaccrued plan benefits, West v. Greyhound Corp., 813 F.2d 951, 955-56 (9th Cir.1987), terminating a pension plan, Cunha v. Ward Foods, Inc., 804 F.2d 1418, 1432 (9th Cir.1986), and deciding whether or not to establish a plan, Moore v. Reynolds Metals Co., 740 F.2d 454, 456 (6th Cir.1984), cert. denied, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985), have all been found nonfiduciary.
 
 
 74
 Several courts have, however, held that misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty. Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc., 828 F.2d 710, 713 (11th Cir.1987); Peoria Union Stock Yards Co. Retirement Plan v. Penn Mut. Life Ins. Co., 698 F.2d 320, 326 (7th Cir.1983) ("Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in [29 U.S.C. Sec. 1104]."); Muenchow v. Parker Pen Co., 615 F.Supp. 1405, 1417 (W.D.Wis.1985) ("ERISA supplies a remedy for the wrong [of misrepresentation by fiduciaries] alleged in [plaintiff's] complaint."); see also Rosen v. Hotel & Restaurant Employees & Bartenders Union of Philadelphia, 637 F.2d 592, 600 n. 11 (3d Cir.1981) (holding a fiduciary is under a duty to communicate material facts to a plan beneficiary), cert. denied, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981); District 65, UAW v. Harper & Row Publishers, Inc., 576 F.Supp. 1468, 1480 (S.D.N.Y.1983). Although these cases deal primarily with misrepresentations concerning the terms of an ERISA plan, their supporting rationale applies with equal force to this case--a fiduciary may not materially mislead those to whom the duties of loyalty and prudence described in 29 U.S.C. Sec. 1104 are owed.
 
 
 75
 Thus, while the parties do not dispute the district court's holding that the decision to offer MIPP benefits was a nonfiduciary business decision, we do not agree with the district court's conclusion that it logically follows that any communications or representations made prior to such a decision were also nonfiduciary. On the contrary, we hold that when serious consideration was given by MBT to implementing MIPP by making a second offering (a question of material fact), then MBT as the plan administrator and/or its Vice President of Personnel Grady, the plan fiduciary, had a fiduciary duty not to make misrepresentations, either negligently or intentionally, to potential plan participants concerning the second offering. Accordingly, any misrepresentations made to the potential plan participants after serious consideration was given to a second offering could constitute a breach of a fiduciary duty. Therefore, since genuine issues of material fact exist as to (1) when serious consideration of the second offering took place, and (2) whether or not any material misrepresentations were made to potential plan participants concerning the second offering, summary judgment was not proper.
 
 
 76
 Id. at 1163-64. The Sixth Circuit emphasized that it was not holding that the defendants (or any fiduciary) had an affirmative duty "to say anything at all or to communicate with potential plan participants about the future availability of MIPP." Id. at 1164. The court simply held that "if the plan administrator and/or plan fiduciary does communicate with potential plan participants after serious consideration has been given concerning a future implementation or offering under the plan, then any material misrepresentations may constitute a breach of their fiduciary duties." Id.; see Drennan v. General Motors Corp., 977 F.2d 246, 250-52 (6th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993) ("As observed by the Berlin court, the duty to avoid material misrepresentations does not require the employer to predict an ultimate decision to offer a plan so long as it fairly discloses the progress of its serious considerations to make a plan available to affected employees.").
 
 
 77
 Judge Abram distinguished Berlin from the present case, finding that "[t]here are no allegations that US West was giving serious consideration to a modification of the EMTP at the time of their retirement in 1987" and, therefore, that "[e]ven under the Berlin decision, the plaintiffs have not stated a claim." Plaintiffs' App. at 447. Judge Abram apparently overlooked paragraph 16(f) and (g) of the complaint wherein plaintiffs specifically alleged "[t]hat the Defendants had given serious consideration of future better force reduction offers" and "falsely or recklessly represented that no better early separation incentive offer would follow EMTP." Plaintiffs' App. at 409 (emphasis added). As with all motions to dismiss, Judge Abram was required to accept these allegations as true and to construe them in the light most favorable to plaintiffs. See Williams, 926 F.2d at 997 (citation omitted). It appears that he did not. Judge Sparr's short dismissal order fails to mention this apparent error in Judge Abram's analysis.[5]
 
 
 78
 The Sixth Circuit is not the only circuit court that has concluded that ERISA prohibits material misrepresentations by fiduciaries. Many other circuits have followed the Sixth Circuit's lead and held that ERISA imposes a duty on plan fiduciaries not to affirmatively mislead plan participants. Howe v. Varity Corp., 36 F.3d 746, 753-54 (8th Cir.1994); Mullins v. Pfizer, Inc., 23 F.3d 663, 668-69 (2d Cir.1994); Vartanian v. Monsanto Co., 14 F.3d 697, 702 (1st Cir.1994); Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 133-35 (3d Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993); Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986, 991 (7th Cir.1993); Barnes v. Lacy, 927 F.2d 539, 543-44 (11th Cir.), cert. denied, 502 U.S. 938, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991); Eddy v. Colonial Life Ins. Co. of America, 919 F.2d 747, 750 (D.C.Cir.1990).[6]
 
 
 79
 Accepting as true and construing in plaintiffs' favor plaintiffs' allegations of affirmative misrepresentations with respect to future force reduction offers, we find those allegations sufficient to state a claim for breach of fiduciary duties under Berlin. We accordingly reverse Judge Sparr's order of dismissal of plaintiffs' second and third claims for relief insofar as they purport to assert breach of fiduciary duties claims predicated on the allegations of material misrepresentations in paragraph 16 of the complaint. However, to the extent that plaintiffs seek to base a cause of action for breach of fiduciary duties on some other type of allegation or theory (e.g., failures to disclose, arbitrary and capricious denial of 5 + 5 benefits, discrimination between plaintiffs and other Pension Plan participants, or adding an "active employee" eligibility requirement to EMTP without Board approval), the dismissal of plaintiffs' second and third claims for relief is affirmed. See our discussion of such claims infra and this court's decision in Averhart, 46 F.3d at 1487-90.[7]
 
 
 80
 3. Interference with plaintiffs' attainment of pension rights
 
 
 81
 In their fifth claim for relief, plaintiffs assert a cause of action under ERISA Sec. 510, 29 U.S.C. Sec. 1140. That section provides in pertinent part: "It shall be unlawful for any person to discharge ... or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...."[8]
 
 
 82
 Plaintiffs allege that defendants "discharged (constructively terminated) or discriminated against [them] as participants in the Pension Plan for the purpose of interfering with the attainment of rights to which plaintiffs might become entitled under the Pension Plan, including enhanced pension benefits or more favorable early retirement incentive plans." Plaintiffs' App. at 427-28, p 50.
 
 
 83
 a. Constructive discharge
 
 
 84
 Plaintiffs allege that defendants "constructively terminated" them by directing a campaign of misrepresentations calculated to coerce acceptance of EMTP, including representations that EMTP would be better than any future force reduction offer and that future changes in company operations could result in lack of promotions, demotions, pay-cuts, transfers and even termination. Plaintiffs' App. at 405-09, pp 11-12 and 16-17. Plaintiffs contend that these allegations are sufficient to support a claim of constructive discharge in violation of 29 U.S.C. Sec. 1140.
 
 
 85
 Judge Abram addressed plaintiffs' constructive discharge claim in discussing plaintiffs' second and fifth claims for relief. Judge Abram recommended that the claim be dismissed, finding as follows:
 
 
 86
 The purpose of Sec. 1140 is to prevent unscrupulous employers from discharging or harassing employees in order to prevent them from obtaining vested rights. Conkwright v. Westinghouse Electric Corp., 933 F.2d 231, 233 (4th Cir.1991); Varhola v. Doe, 820 F.2d 809, 816 (6th Cir.1987). In discussing the legislative history of Sec. 1140, the courts have found that the section applies when the employee is terminated or is harassed causing the employee to quit before vesting in a pension. West v. Butler, 621 F.2d 240, 245-46 (6th Cir.1980); [United Auto Workers] v. Park-Ohio Industries, Inc., 661 F.Supp. 1281, 1304 (N.D.Ohio 1987); Rollo v. Maxicare of Louisiana, 698 F.Supp. 111, 113-14 (E.D.La.1988). None of the plaintiffs were terminated. There is no allegation that while they were employed, the defendants attempted to harass them to prevent them from receiving a pension.
 
 
 87
 ...
 
 
 88
 Where constructive discharge is claimed, the Court must establish whether the plaintiff has made a prima facie case based upon an objective, reasonable person test. Berger v. Edgewater Steel Co., 911 F.2d 911, 922 (3d Cir.1990)[, cert. denied, 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991) ]. The plaintiffs must show that they would have been fired if they did not accept the early retirement offer. Id. at 923. The plaintiffs must show that the conditions were intolerable so as to cause the plaintiffs to give up ERISA rights. Lojek v. Thomas, 716 F.2d 675, 680-81 (9th Cir.1983). There are no factual allegations in the complaint that support a claim that US West in November, 1989 adopted the "5 + 5" plan with the intent to interfere with a welfare benefit plan to which the plaintiffs were entitled. Where a company has made a statement that it was going to eliminate special benefits sometime in the future, thereby causing an employee to retire in order to not lose a benefit, the Court has held that there is no constructive discharge of the employee. Berger, supra, at 922-23; Adams v. LTV Steel Mining Co., 936 F.2d 368, 370 (8th Cir.1991)[, cert. denied, 502 U.S. 1073, 112 S.Ct. 968, 117 L.Ed.2d 134 (1992) ].
 
 
 89
 Plaintiffs' App. at 442, 450.
 
 
 90
 Judge Abram essentially found that the conduct alleged by plaintiffs was simply insufficient to support a claim under section 510 of ERISA. Judge Abram's analysis suggests that anything short of firing an employee, threatening to fire him, or harassing him until he's forced to quit or otherwise cease employment cannot constitute a constructive discharge. We think this too narrowly construes the concept of constructive discharge.
 
 
 91
 In this case, plaintiffs claim that defendants fraudulently induced or tricked them into quitting by deceiving them into thinking that EMTP was the best offer that would be made and that if they didn't accept EMTP, they would risk being demoted, transferred, or terminated. Plaintiffs' App. at 406, 409, pp 11(b) and 16(g). At what point, if any, does such trickery, if proved, amount to a constructive discharge? As of yet, this court has not had occasion to address that particular issue.[9]
 
 
 92
 The three cases relied upon by Judge Abram in discussing plaintiffs' constructive discharge claim, Berger, Lojek, and Adams, were decided on motions for summary judgment, not motions to dismiss, and did not involve the sort of "trickery" alleged to have occurred in the present case. Adams, 936 F.2d at 370 (affirming summary judgment on ERISA Sec. 510 discrimination claim where plaintiffs alleged employer had discriminated between salary and hourly employees with respect to allowing early retirement); Berger, 911 F.2d at 922-23 (affirming summary judgment on plaintiff's claim that employer constructively discharged him by simply informing him of a proposed Pension Plan amendment that would eliminate his special benefits); Lojek, 716 F.2d at 680-83 (affirming summary judgment on plaintiffs' claim that his former law firm constructively discharged him by changing its stock purchase and redemption agreements); see also Gray v. York Newspapers, Inc., 957 F.2d 1070, 1080-83 (3d Cir.1992) (affirming summary judgment because evidence was insufficient to support plaintiff's alleged belief that if she refused early retirement, she would be harassed and forced out of her job).
 
 
 93
 In Devine v. Combustion Engineering, Inc., 760 F.Supp. 989 (D.Conn.1991), the plaintiffs claimed that their former employer had violated ERISA Sec. 510 by "tricking them 'into leaving their employment early in order to save money.' " Id. at 993 (quoting the plaintiffs' complaint). The plaintiffs alleged that their employer had offered them a retirement incentive program including free lifetime medical and dental benefits and then, when plaintiffs accepted, broke their promise to provide such benefits. Id. at 990-91. With regard to the plaintiffs' claim under section 510 of ERISA, the court found: "Assuming plaintiffs' allegations to be true for purposes of the motion to dismiss, I believe that they have stated a cause of action for which relief may be granted. They are certainly entitled to offer evidence to support this claim." Id. at 993.
 
 
 94
 We believe that plaintiffs are equally entitled to develop and offer evidence of constructive discharge under ERISA Sec. 510 in the present case. The alternative is to hold that an employer who (as alleged in this case) intentionally lies to his employees about the costs and benefits of accepting an early retirement offer in order to induce them to take the offer and prevent them from attaining additional pension rights does not violate ERISA Sec. 510. That seems incongruous with both the letter and the spirit of section 510.
 
 
 95
 We must accept as true and construe in plaintiffs' favor plaintiffs' allegations that defendants purposely deceived them. If proven, such deception could be found to vitiate the voluntariness of plaintiffs' decision to accept termination under EMTP and could support an inference of constructive discharge. See Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1223 (5th Cir.) (holding that alleged deceptive conduct by Mobil might be found to vitiate the voluntariness of plaintiffs' decision to retire), cert. denied, --- U.S. ----, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992); Henn v. National Geographic Soc., 819 F.2d 824, 828-29 (7th Cir.), (holding that "voluntariness" question in constructive discharge case depends in part on whether plaintiff's choice was "free from fraud or other misconduct"), cert. denied, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987); see also Mullins v. Pfizer, Inc., 828 F.Supp. 139, 148 (D.Conn.1993) (discussing but not deciding whether fraudulent inducements which go beyond mere failures to disclose constitute constructive discharges), aff'd in part and rev'd in part, 23 F.3d 663, 668-69 (2d Cir.1994).
 
 
 96
 We emphasize that we make no evaluation of the factual or legal sufficiency of any evidence that plaintiffs may seek to present in the district court, such as the aforementioned management bulletin and the article in the MB Times. We simply hold that plaintiffs have stated a claim for constructive discharge by alleging that defendants purposely deceived them into accepting EMTP in order to prevent them from attaining greater pension rights. Whether plaintiffs can actually find and present evidence to this effect sufficient to establish a "prima facie case" under ERISA Sec. 510 is another matter altogether. See Gavalik v. Continental Can Co., 812 F.2d 834, 852 (3d Cir.) (holding that in order to establish a "prima facie case" under section 510 of ERISA, a plaintiff must show "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled") cert. denied, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987).[10]
 
 
 97
 b. Discrimination
 
 
 98
 As support for their discrimination claim under ERISA Sec. 510, plaintiffs allege that defendants discriminated between managers and directors at Mountain Bell by making the "active employee" eligibility requirement to the 5 + 5 amendment applicable only to managers. Plaintiffs' App. at 409-12, pp 18-21. Plaintiffs contend that this "discrimination" violates ERISA Sec. 510.
 
 
 99
 Judge Abram addressed plaintiffs' discrimination claim in discussing plaintiffs' second and third claims for relief. He found that the allegations of discrimination did not set forth a claim cognizable under 29 U.S.C. Sec. 1140. Plaintiffs' App. at 442, 448. Judge Abram cited Judge Sparr's decision in Sabell, 1992 WL 469776 at * 7, finding that "there were legitimate reasons for the Defendant to differentiate between the Directors' Program group and the Plaintiffs [managers] for purposes of eligibility for 5 + 5 benefits." This court has since affirmed that decision, noting that " 'ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits.' " Averhart, 46 F.3d at 1488 (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983) and citing Owens v. Storehouse, Inc., 984 F.2d 394, 398 (11th Cir.1993) and McGann v. H & H Music Co., 946 F.2d 401, 408 (5th Cir.1991), cert. denied sub nom., Greenberg v. H & H Music Co., --- U.S. ----, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992)).
 
 
 100
 For the same reasons noted in Averhart, we affirm the dismissal of plaintiffs' cause of action for discrimination under ERISA Sec. 510, 29 U.S.C. Sec. 1140, in the present case.
 
 
 101
 4. Void and/or arbitrary and capricious denial of 5 + 5 benefits to those who had accepted early retirement under EMTP option 2
 
 
 102
 As discussed supra, plaintiff Cowdrey accepted termination under EMTP option 2. Under option 2, Cowdrey was to take a three year leave of absence, get credit for three more years of service, and receive one-half of his annual salary as severance pay at the end of those three years. During the three year leave of absence, Cowdrey was to continue to receive employee benefits and participate in the US WEST Employee Stock Ownership Plan.
 
 
 103
 In the eighth claim for relief, plaintiff Cowdrey alleges that the EBC and John G. Shea's decision to deny 5 + 5 benefits to those employees who were on leave of absence under EMTP option 2 is "void and/or arbitrary and capricious." Plaintiffs' App. at 432, p 64; see also p 50(e). Judges Abram and Sparr found this claim subject to dismissal, and we agree.
 
 
 104
 Plaintiff Cowdrey alleges that the EBC's decision to deny 5 + 5 benefits to EMTP option 2 retirees is void because "the EBC has not acted in accordance with Sec. 11 of the Pension Plan." Id. at p 64(a). This court considered the same claim in reviewing Sabell and affirmed summary judgment, stating as follows:
 
 
 105
 The Sabell plaintiffs contend that the "active employee[s] on the payroll" requirement in the 5 + 5 amendment was invalid and should not have been applied to them because the requirement was not contained in the November 29, 1989, Board of Directors' resolution authorizing the EBC to adopt the proposed amendment. Plaintiffs' argument assumes that only the Board of Directors, not the EBC, had the authority to amend the Pension Plan. We disagree.
 
 
 106
 The Pension Plan expressly provides for amendments by the EBC itself "subject to the approval of the Board of Directors[.]" Averhart App. at 306. In this case, plaintiffs do not dispute that the EBC had Board approval to adopt the 5 + 5 amendment, albeit without specific reference to the "active employee[s] on the payroll" requirement. Because plaintiffs have thus failed to show that the adoption of the 5 + 5 amendment was procedurally flawed, we must reject their claim that the EBC was precluded from relying thereon in denying their benefit claims.
 
 
 107
 Averhart, 46 F.3d at 1489. Given this finding in Sabell and the fact that plaintiffs in the present case also concede that the EBC had Board approval to adopt the 5 + 5 amendment, we must affirm the dismissal of plaintiff Cowdrey's claim that the "active employee" eligibility requirement is void.
 
 
 108
 Cowdrey also alleges that the EBC's denial of 5 + 5 benefits is arbitrary and capricious because it "impair[ed] the rights of participants granted under the initial 5 + 5 Amendment" and "violated the ERISA provisions as set forth in the Second, Third, Fourth and Fifth Claims for Relief." Plaintiffs' App. at 432, p 64(b) and (c). The "arbitrary and capricious" standard is applicable whenever an administrator or fiduciary has been given "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989); see, e.g., Rademacher v. Colorado Ass'n of Soil Conservation Districts Medical Benefit Plan, 11 F.3d 1567, 1569 (10th Cir.1993); Sandoval v. Aetna Life and Casualty Ins. Co., 967 F.2d 377, 379-80 (10th Cir.1992). "An administrator's action is arbitrary and capricious if it is based on a 'lack of substantial evidence, mistake of law, bad faith, [or] conflict of interest.' " Counts v. Kissack Water and Oil Serv., Inc., 986 F.2d 1322, 1324 (10th Cir.1993) (quoting Winchester v. Prudential Life Ins. Co., 975 F.2d 1479, 1483 (10th Cir.1992)).
 
 
 109
 Here, there is no allegation that the denial was based on a lack of substantial evidence, mistake of law, bad faith, and/or conflict of interest, or anything arguably akin to the above. The denial was simply based on the "active employee on the payroll" eligibility requirement. Accordingly, we affirm the dismissal of the eighth claim for relief. See Sandquist/Averhart, 1992 WL 469739 at * 3-4 (granting summary judgment for defendants on "arbitrary and capricious" issue); Sabell, 1992 WL 469776 at * 3-7 (same); Averhart, 46 F.3d at 1486-89 (affirming summary judgment on "arbitrary and capricious" issues in Sandquist, Averhart, and Sabell ).
 
 
 110
 5. Using Pension Plan assets to benefit plan sponsor
 
 
 111
 In their fourth claim for relief, plaintiffs allege that defendants "used surplus assets of the Pension Plan in a manner which inured to the benefit of the Plaintiffs' employer, [Mountain Bell] and [US WEST,] and failed to hold the Pension Plan assets for the exclusive purposes of providing benefits to participants in the Pension Plan and their beneficiaries, in violation of ERISA Sec. 03(c)." Plaintiffs' App. at 427, p 49. Section 403(c) of ERISA provides in pertinent part that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. Sec. 1103(c).
 
 
 112
 Judge Abram recommended dismissal of plaintiffs' fourth claim for relief, and Judge Sparr agreed. Judge Abram found that the plaintiffs had merely made a "conclusory allegation" and had failed to set forth any facts or law that supported their section 403(c) claim. Plaintiffs' App. at 448-49. Judge Abram also relied on Holliday v. Xerox Corp., 732 F.2d 548, 551 (6th Cir.), cert. denied, 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984), in which the Sixth Circuit stated:
 
 
 113
 The language of ERISA stating that "the assets of a plan shall never inure to the benefit of any employer" cannot be read as a prohibition against any decisions of an employer with respect to a pension plan which have the obvious primary purpose and effect of benefitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective.
 
 
 114
 We agree with Judge Abram's analysis and affirm the dismissal of plaintiffs' fourth claim for relief. The anti-inurement or "exclusive benefit" policy of section 403(c) of ERISA is intended to "protect participants' expected payments" by preventing employers from diverting funds to themselves. Outzen v. FDIC ex rel. State Examiner of Banks, 948 F.2d 1184, 1188 (10th Cir.1991). An alleged violation of section 403(c) might, for example, involve a reversion of surplus assets to an employer at a plan's termination pursuant to a plan provision. See, e.g., Borst v. Chevron Corp., 36 F.3d 1308, 1320-21 (5th Cir.1994); Holland v. Valhi Inc., 22 F.3d 968 (10th Cir.1994); Outzen, 948 F.2d at 1185-88.
 
 
 115
 In the present case, no such reversion, diversion, or any other sort of payment of surplus assets to Mountain Bell or US WEST is alleged. Plaintiffs simply claim that defendants should have used the surplus plan assets to benefit plaintiffs instead of using them to fund a second early retirement offer which furthered defendants' desired reductions in force. It is undisputed that the surplus funds which plaintiffs wish had passed to them under EMTP remained with the Pension Plan and were still held in trust for participants in the plan and their beneficiaries. There is no allegation that the assets were used in any way other than to pay benefits to participants and beneficiaries and to pay reasonable administrative expenses. Hence, there are no allegations which would support the return of any assets to the Pension Plan under section 403(c) of ERISA. See Aldridge v. Lily-Tulip, Inc. Salary Retirement Plan Benefits Committee, 953 F.2d 587, 592 n. 6 (11th Cir.1992) ("The exclusive benefit rule can only be violated if there has been a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants.") (citing Holliday, 732 F.2d at 551-52).
 
 6. Partial termination of Pension Plan
 
 116
 In their seventh claim for relief, plaintiffs claim that the initial force reduction in which they and approximately 6,000 other US WEST employees accepted termination under EMTP "constituted a partial termination of the Pension Plan under 29 U.S.C. Sec. 1344." Plaintffs' App. at 429, p 54. Plaintiffs allege that the force reduction was connected with "a major corporate event" and "involved a significant number of employees."[11] Id. at pp 54-55. Plaintiffs claim that they are entitled to a "distribution of Pension Plan assets, particularly surplus assets," as a result of this partial termination. Id. at p 57.
 
 
 117
 Judge Abram recommended that plaintiffs' seventh claim for relief be dismissed, and Judge Sparr agreed. Judge Abram based his recommendation on Sage v. Automation, Inc. Pension Plan and Trust, 845 F.2d 885, 891 (10th Cir.1988) and Anderson v. Emergency Medicine Assocs., 860 F.2d 987, 990-91 (10th Cir.1988), in which this court held that voluntary employee decisions to leave the employer do not constitute employee terminations which can trigger a partial termination. Plaintiffs' App. at 451.
 
 
 118
 As discussed supra in connection with the claims for constructive discharge under section 510 of ERISA, plaintiffs have alleged that their decision to accept termination under EMTP was fraudulently induced and therefore not voluntary. Given this allegation, neither Sage nor Anderson would appear to be applicable. The court must accordingly reverse the dismissal of plaintiffs' partial termination claim.[12]
 
 
 119
 7. Civil penalties for failure to supply requested information
 
 
 120
 In their ninth claim for relief, plaintiffs sought the imposition of civil penalties against "the Defendant administrators" under 29 U.S.C. Sec. 1132(c), which provides in pertinent part:
 
 
 121
 (1) Any administrator ... (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.
 
 
 122
 Plaintiffs alleged that they "requested certain information" from "the Defendant administrators," but "the Defendant administrators" failed or refused to comply with that request. Plaintiffs' App. at 432-33, pp 65-67. Plaintiffs did not specify what the "certain information" was nor identify the particular "Defendant administrators" to whom their requests were addressed.
 
 
 123
 Judge Abram, noting that "thousands of documents ha[d] been produced" and that the assessment of civil penalties under section 1132(c) was "for the court's discretion," recommended dismissal of plaintiffs' ninth claim for relief because it simply "fail[ed] to state a claim." Plaintiffs' App. at 453. Judge Abram found that plaintiffs had not alleged what documents were requested, what documents were received, and how plaintiffs had been harmed. Judge Sparr agreed with Judge Abram's findings. We too agree with Judge Abram's analysis and affirm the dismissal of plaintiffs' ninth claim for relief.[13]
 
 
 124
 8. Other "claims for relief"
 
 
 125
 Plaintiffs' remaining claims, the first and sixth "claims for relief," are actually not claims at all. The first claim for relief is a laundry list of declarations plaintiffs wish the court to make with respect to "the rights and the legal relationships between the parties." Plaintiffs' App. at 422-24. All of the declarations sought are, in one way or another, subsumed into the other claims for relief. We therefore affirm the dismissal of plaintiffs' first claim for relief.
 
 
 126
 In the sixth claim for relief, plaintiffs seek to invoke the contractual remedy of rescission. Plaintiffs claim that they accepted EMTP "through mistake, undue influence, coercion or fraud" and state that they now wish to rescind their acceptance and receive instead the benefits of the 5 + 5 amendment. Id. at 428. Plaintiffs fail, however, to cite any ERISA provision that authorizes the use of rescission as a remedy. We therefore affirm the dismissal of plaintiffs' sixth claim for relief.C
 
 Recusal
 
 127
 The standards for recusal are well established. 28 U.S.C. Sec. 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Subsection (b)(1) further provides for mandatory recusal where the judge "has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts." The basic test is whether a reasonable person armed with the relevant facts would harbor doubts about the judge's impartiality. United States v. Cooley, 1 F.3d 985, 993 (10th Cir.1993); United States v. Burger, 964 F.2d 1065, 1070 (10th Cir.1992); Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir.1987). "There is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." Hinman, 831 F.2d at 939. We review a recusal decision on an abuse of discretion standard. Willner v. University of Kansas, 848 F.2d 1020, 1023 (10th Cir.1988), cert. denied, 488 U.S. 1011, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989).
 
 
 128
 Plaintiffs assert that Judge Sparr should have recused himself for the following reasons: (1) he had formerly worked for and represented Mountain Bell; (2) he had special knowledge of the internal workings of Mountain Bell; and (3) he knew Fred Cook and was acquainted with other individuals at US WEST. Defendants counter that (1) Judge Sparr terminated his employment with Mountain Bell more than twenty years ago and has not seen Mr. Cook and other witnesses or family members since then, and (2) in any event, mere familiarity is not enough to mandate a recusal.
 
 
 129
 We find that Judge Sparr's denial of plaintiffs' motion to recuse was not an abuse of discretion. A reasonable person would not harbor doubts about Judge Sparr's impartiality in the present case. Counsel in Averhart, Sandquist, and Sabell perceived no "appearance of impartiality," (Defendants' Supp.App. at 210), and doubts were not raised simply because Judge Sparr worked for or even represented Mountain Bell some twenty to thirty years ago and may have socialized with fellow Mountain Bell employees. See United States v. Lovaglia, 954 F.2d 811, 815-17 (2d Cir.1992) (affirming denial of recusal where judge's business or social relationship ceased seven or eight years prior to proceedings); Sierra Club v. Simkins Indus., Inc., 847 F.2d 1109, 1116-18 (4th Cir.1988) (affirming denial of recusal where judge had been member of Sierra Club fourteen years ago), cert. denied, 491 U.S. 904, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989). Moreover, there is nothing in the record to suggest that Judge Sparr was biased in favor of defendants. Judge Sparr appears to have been more than fair in his treatment of plaintiffs, giving them numerous opportunities to replead their case.
 
 
 130
 Accordingly, the judgment of the United States District Court for the District of Colorado is AFFIRMED IN PART AND REVERSED IN PART. The case is remanded to the district court for proceedings consistent with this opinion.
 
 
 
 *
 Honorable Monti L. Belot, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Actually, as shall be discussed infra, the tenth claim for relief was that there was no adequate remedy "under ERISA" and that plaintiffs should therefore be entitled to "the remedies available to them under any other law." Plaintiffs' App. at 433-34
 
 
 [2]
 Henceforth, unless otherwise noted, the "first amended complaint after consolidation" will be referred to as the complaint or final amended complaint
 
 
 [3]
 By correspondence dated June 9, 1993, we ordered the parties to brief the following jurisdictional issue: "Whether the [Tenth Circuit] has jurisdiction to review the December 1991 Order of the District Court for the City and County of Denver entered in Case No. 90-CV-3927" which held that plaintiffs' state law claims were preempted by ERISA? The parties filed separate briefs limited to this issue. By order of October 19, 1993, this court reserved judgment on the jurisdictional issue and directed that the parties' briefs on the jurisdictional issue be submitted to the panel assigned to handle the appeal
 
 
 [4]
 Lead plaintiff Berlin's allegations in this respect were particularly compelling
 Berlin alleges that he initially notified MBT that he would retire effective June 7, 1982, which would have enabled him to elect MIPP severance benefits. However, he was urged by a district manager for MBT to change his effective retirement date to May 31, 1982, for administrative accounting convenience. Berlin agreed and retired effective May 31, 1982, which placed him one day outside the MIPP offering in question.
 Id. at 1156.
 
 
 [5]
 As we have noted, this case was a procedural nightmare by the time defendants' motion to dismiss was referred to Judge Abram. The so-called "First Amended Complaint After Consolidation" is hardly a model of clarity and conciseness. The law pertaining to ERISA is complex, to say the least. It is quite understandable that Judges Abram and Sparr overlooked these allegations
 
 
 [6]
 Since Berlin, the Sixth Circuit has gone further and found that ERISA may impose on fiduciaries a duty to disclose material matters, though such a duty does not require the fiduciary "to disclose its internal deliberations nor interfere with the substantive aspects of the bargaining process." Drennan, 977 F.2d at 251. Some other circuits agree. Howe, 36 F.3d at 754 ("[I]n some instances a fiduciary's duty goes beyond merely refraining from making affirmative misrepresentations."); Anweiler, 3 F.3d at 991 ("Fiduciaries must also communicate material facts affecting the interests of beneficiaries. This duty exists when a beneficiary asks fiduciaries for information, and even when he or she does not.") (citations omitted); Eddy, 919 F.2d at 750 ("A fiduciary has a duty not only to inform a beneficiary of new and relevant information as it arises, but also to advise him of circumstances that threaten interests relevant to the relationship.")
 Because we hold that plaintiffs failed to state a claim for failure to disclose, we need not decide whether a duty to disclose exists.
 
 
 [7]
 Defendants also contend that "[r]egardless of whether the District Court's reasons for dismissing the Second and Third Claims were valid, those claims were properly dismissed because they seek relief that is personal to the Plaintiffs, rather than planwide." Defendants' Opening Brief at 24. Actually, plaintiffs seek both planwide and individual forms of relief in connection with their breach of fiduciary duties claims. In paragraph 28 of their complaint, plaintiffs seek planwide relief pursuant to 29 U.S.C. Sec. 1109(a). Plaintiffs' App. at 414, p 28. In paragraphs 25 and 26 of their complaint, plaintiffs allege that "[a]s a proximate result of the breaches of fiduciary duty " they have suffered other individual damages. No specific statute authorizing individual forms of relief is mentioned, although plaintiffs do generally cite section 502(a) of ERISA, 29 U.S.C. Sec. 1132, in the opening paragraph of their complaint
 We decline to decide whether the individual relief sought in paragraphs 25 and 26 may be available. Should that issue arise in the district court, we direct the court's attention to the following cases: Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); Howe v. Varity Corp., 36 F.3d 746 (8th Cir.1994); and Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986 (7th Cir.1993).
 
 
 [8]
 We note that Judge Abram found that ERISA Sec. 510 "applies to the employer only, and not the pension trustees or administrators." Plaintiffs' App. at 443. We disagree
 29 U.S.C. Sec. 1140 states that the proscribed actions are unlawful "for any person." (Emphasis added). Since both terms, "employer" and "person," are defined by ERISA, see 29 U.S.C. Sec. 1002(5) and (9), we must assume that Congress used the term "person" deliberately. Although the verbs used in Sec. 1140, such as "discharge," "suspend," or "discipline," may suggest action by an employer, Congress also used broader verbs, such as "discriminate," and the much broader term "person," in stating by whom such actions would be illegal. In light of the plain language of the section, we cannot agree with the defendants that Congress intended to limit those who could violate Sec. 1140 to employers. See Tingey v. Pixley-Richards West, Inc., 953 F.2d 1124, 1132 n. 4 (9th Cir.1992).
 Custer v. Pan American Life Ins. Co., 12 F.3d 410, 421 (4th Cir.1993).
 
 
 [9]
 In two cases arising out of an amendment to Mobil Oil Corporation's pension plan, this court considered allegations that Mobil had fraudulently induced its employees to accept early retirement in violation of ERISA Sec. 510. Raymond v. Mobil Oil Corp., 983 F.2d 1528, 1532-37 (10th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993); Mitchell v. Mobil Oil Corp., 896 F.2d 463, 473-74 (10th Cir.), cert. denied, 498 U.S. 898, 111 S.Ct. 252, 112 L.Ed.2d 210 (1990). However, the court never determined whether a fraudulent inducement could constitute a constructive discharge because the plaintiff employees did not meet the definition of "participants" in 29 U.S.C. Sec. 1002(7) and therefore did not have standing to seek enforcement of their ERISA rights under 29 U.S.C. Sec. 1132(a). Raymond, 983 F.2d at 1534-35; Mitchell, 896 F.2d at 474. The plaintiffs did not qualify as "participants" because, under Mobil's early retirement offer, they had received a lump sum payment of all of their vested pension benefits and because they did not allege (in Mitchell ) or present any evidence (in Raymond ) that they should be reinstated. Raymond, 983 F.2d at 1537; Mitchell, 896 F.2d at 474
 In the present case, plaintiffs are still receiving benefits and therefore have standing.
 
 
 [10]
 We note that Judge Abram found that the "evidence of active misrepresentations" presented to him was insufficient. Plaintiffs' App. at 447. We do not express any agreement or disagreement with this finding, and we acknowledge that such a finding in the future may be grounds for summary judgment on both plaintiffs' breach of fiduciary duties and ERISA Sec. 510 claims. At the dismissal stage, however, evaluating plaintiffs' evidence is not appropriate. The focus must be on plaintiffs' complaint and the allegations therein
 
 
 [11]
 Plaintiffs use the terms "major corporate event" and "significant number" to solidify their reliance on In re Gulf Pension Litigation, 764 F.Supp. 1149 (S.D.Tex.1991), aff'd sub nom., Borst v. Chevron Corp., 36 F.3d 1308, 1314 n. 11 (5th Cir.1994) (declining to consider on appeal whether partial termination had occurred). In that case, the district court found that "IRS revenue rulings suggest that an employer-initiated permanent reduction of either a significant number or a significant percent of employees from a plan as part of a major corporate event may constitute a partial termination." Id. at 1163 (citing Rev.Rul. 81-27 1981-1 C.B. 228; Rev.Rul. 73-284, 1973-2 C.B. 139; and Rev.Rul. 72-439, 1972-2 C.B. 223) (emphasis added)
 
 
 [12]
 We note that partial termination claims are often exceedingly complex and that some courts, in sorting out such claims, have sought guidance from the Internal Revenue Service which is responsible for administering the partial termination statute. See, e.g., Weil v. Retirement Plan Admin. Comm., 933 F.2d 106, 107 (2d Cir.1991) (inviting the IRS to participate as an amicus on rehearing). On remand, the district court may want to consider doing likewise
 
 
 [13]
 The plaintiffs in Sandquist asserted a similar claim for civil penalties against defendant John G. Shea. This court affirmed summary judgment for Shea because he was not an "administrator" within the meaning of the statute and thus could not be subject to the penalties authorized by 29 U.S.C. Sec. 1132(c). Averhart, 46 F.3d at 1489-90