48 F.3d 1230
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 X-TRA ART, INC., a California Corporation; LINDA WEILL,
Plaintiffs-Appellants,
v.
CONSUMER UNION OF THE UNITED STATES, Defendant-Appellee.
 No. 93-16571.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 17, 1995.*
Decided March 8, 1995.
 
 1
 Before: SNEED and O'SCANNLAIN, Circuit Judges, and MERHIGE,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Appellants X-Tra Art, Inc. and Linda Weill (Appellants) appeal the district court's ruling that their alleged product disparagement action against Consumers Union of the United States, Inc. (Consumers Union) is time-barred. Appellants argue that the district court erred in applying California's one-year statute of limitations for defamation actions, rather than the two-year statute of limitations for property actions. We affirm the ruling of the district court dismissing Appellants' case.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 4
 Linda Weill is the inventor of Rainbow Foam Paint, a patented mixture of shaving cream and food coloring sold in pressurized aerosol cans. Weill founded X-Tra Art, Inc. to manufacture the product, which is used extensively in public school art classes as finger paint for young children. Rainbow Foam Paint has been on the market since the mid-1980s.
 
 
 5
 Consumers Union published an article entitled "Cute But Dangerous" in the December/January 1990 issue of its bimonthly children's magazine, Zillions. The article alleged that Rainbow Foam Paint was an unsafe product because it could catch fire when used near a flame, and because it bore no warning.
 
 
 6
 Appellants demanded a retraction, maintaining that the product was not flammable and that its warnings and directions for safe use complied with federal law. A period of negotiations followed. Consumers Union eventually acknowledged its article had been incorrect and agreed to print a retraction.
 
 
 7
 Appellants then informed Consumers Union of their intent to seek compensation for damages to X-Tra Art's business and the reputation of Rainbow Foam Paint resulting from the Zillions article. At this point, Consumers Union contacted the Consumer Product Safety Commission (CPSC). In its December 28, 1990 letter, Consumers Union stated its opinion that Rainbow Foam Paint was not in compliance with the safety requirements of the Federal Hazardous Substance Act (FHSA), and requested that CPSC conduct an investigation into the product's flammability.[1] Consumers Union never printed a retraction. There has never been a reported injury relating to the flammability of Rainbow Foam Paint.
 
 
 8
 Appellants filed suit against Consumers Union in San Francisco Superior Court on November 25, 1992. Consumers Union removed the case to federal district court on the basis of diversity jurisdiction. Appellants' amended complaint alleged (1) product disparagement (also called "trade libel") based on the statements in the Zillions article, and (2) breach of contract based on Consumers Union's failure to retract its statements. The district court granted Consumers Union's motion to dismiss the first cause of action as time-barred under Cal.Civ.Proc.Code Sec. 340(3), and granted summary judgment in Consumers Union's favor on the second cause of action, finding no contract existed. Appellants timely appeal the dismissal of their product disparagement claim. This court has jurisdiction under 28 U.S.C. Sec. 1291.
 
 II.
 DISCUSSION
 
 9
 Appellants argue that the appropriate statute of limitations for their product disparagement claim is two years, as prescribed by Cal.Civ.Proc.Code Sec. 339(1). We review de novo the district court's ruling on the appropriate state statute of limitations. Merritt v. County of Los Angeles, 875 F.2d 765, 768 (9th Cir.1989).
 
 
 10
 Appellants rely on Guess, Inc. v. Superior Court, 176 Cal.App.3d 473 (1986), in which the court applied the two-year statute of limitations to a product disparagement suit between two competitors. The district court, however, concluded that the one-year statute of limitations should apply because:
 
 
 11
 [O]n its facts, [Appellants'] product disparagement claim is more akin to a claim for libel than to one for infringement of property rights.... Consumers Union is not one of [Appellants'] business competitors. Where no implication of unfair competition arises from the allegations of the complaint, product disparagement is like a standard libel claim and must be treated as such with respect to its statute of limitations.
 
 
 12
 Were we to reach the merits of Appellants' claim, Consumers Union's actions in this case would bear close scrutiny. However, we agree with the district court that under California law application of the one-year statute of limitations for defamation is appropriate in this case. "[T]he First Amendment establishes a broad zone of protection within which the press may publish without fear of incurring liability on the basis of injurious falsehood." Blatty v. New York Times Co., 42 Cal.3d 1033, 1041 (1986), cert. denied, 485 U.S. 934 (1988). This zone of protection is created by rules that limit media defendants' liability for defamatory publications. These rules apply not only to defamation actions, but to "all claims whose gravamen is the alleged injurious falsehood of a statement." Id. at 1042. Thus, courts look behind the label of the cause of action to determine whether First Amendment protections apply. Reader's Digest Ass'n v. Superior Court, 37 Cal.3d 244, 265 (1984) (in bank), cert. denied, 478 U.S. 1009 (1986). For example, a public-figure plaintiff who claims a "false light" invasion of privacy based on a false publication must prove actual malice. She cannot evade the constitutional standard of liability by merely relabeling her cause of action. See Time, Inc. v. Hill, 385 U.S. 374 (1967). Furthermore, such constitutional protections apply "regardless of whether the false statement relates to the plaintiff personally or to plaintiff's property." Leonardini v. Shell Oil Co., 216 Cal.App.3d 547, 576 (1989), cert. denied, 498 U.S. 919 (1990). Therefore, a product disparagement claim against a media defendant for allegedly false statements in a television broadcast is "subject to the same [F]irst [A]mendment requirements that govern actions for defamation." Unelko Corp. v. Rooney, 912 F.2d 1049, 1058 (9th Cir.1990), cert. denied, 499 U.S. 961 (1991); accord Auvil v. CBS "60 Minutes", 800 F.Supp. 928 (E.D.Wash.1992); cf. Bose Corp. v. Consumers Union of the United States, Inc., 466 U.S. 485 (1984) (assuming without deciding that proof of actual malice is required in a product disparagement action brought by a public-figure plaintiff against a media defendant).
 
 
 13
 The courts in California, as elsewhere, have extended this zone of protection principle to include statutory limitations on defamation actions as well as constitutional ones. Fellows v. National Enquirer, Inc., 42 Cal.3d 234, 240, 245 (1986). "Where the complaint is based on an offensive statement that is defamatory, plaintiffs have not been allowed to circumvent the statutory limitation[s] by proceeding on a theory other than defamation." Id. at 240. Thus, the California Supreme Court has held that a plaintiff who brings a false light action based on a defamatory publication must plead and prove special damages, as required by the statutory law of defamation. See id.; see also Briscoe v. Reader's Digest Assoc., 4 Cal.3d 529 (1971) (applying retraction request and special damages allegation requirements of statutory defamation law to false light claim based on newspaper article); Grimes v. Carter, 241 Cal.App.2d 694 (1966) (affirming dismissal of emotional distress claim based on slanderous statements because plaintiff failed to post bond required under statutory defamation law).
 
 The rationale for these cases is clear:
 
 14
 If these [statutory] limitations applied only to actions denominated "defamation," they would furnish little if any protection to free-speech and free-press values: plaintiffs suing press defendants might simply affix a label other than "defamation" to their injurious-falsehood claims ... and thereby avoid the operation of the limitations and frustrate their underlying purpose.... It follows that to prevent creative pleading from rendering the limitations nugatory, they must be broadly applicable wherever the gravamen of the claim is injurious falsehood.
 
 
 15
 Blatty, 42 Cal.3d at 1045 (emphasis added). This is just such a case. Appellants' claim for product disparagement is based solely on the allegedly false statements published by Consumers Union in Zillions. The Zillions article stands within the broad zone of protection for freedom of the press. The gravamen of Appellants' claim is injurious falsehood; accordingly, California's statutory limitations on defamation actions apply. Section 340(3) is such a limitation. The district court was correct to apply the one-year statute of limitations.
 
 
 16
 The dismissal of Appellants' product disparagement claim as time-barred is therefore AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 Honorable Robert R. Merhige, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 CPSC's tests indicated that Rainbow Foam Paint's container, when held upside down and exposed to a flame, produced a flame or flashback (a flame extending back to the dispenser). On January 17, 1991, CPSC contacted Weill and informed her that the tests had found the foam paint to be a banned hazardous substance under the FHSA. It further insisted that X-Tra Art stop distribution of the product and reformulate it. Appellants protested CPSC's findings and argued that Rainbow Foam Paint was exempted from the FHSA as an art material
 On April 26, 1991, at CPSC's request, the U.S. Attorney's office in New Haven, Connecticut, filed a civil forfeiture action against cans of Rainbow Foam Paint at the Early Learning Centre, one of Appellants' biggest customers. The complaint alleged that Rainbow Foam Paint was a banned hazardous substance and sought condemnation of the cans. Appellants intervened in the action. The district court held that Rainbow Foam Paint was exempt from classification as a banned hazardous substance because it was an art material, and that its labeling complied with the FHSA. That ruling, however, was reversed on appeal. The Second Circuit found that the exemption for art materials applied only to child users who were able to "read and heed" a warning label. Such was not the case with Rainbow Foam Paint, which was intended for use by children as young as three years old. The court entered summary judgment in favor of the government. United States v. Articles of Banned Hazardous Substances Consisting of an Undetermined Number of Cans of Rainbow Foam Paint, 34 F.3d 91 (2d Cir.1994).