Marian E. WASHINGTON, Plaintiff,

v.

Joseph C. SMITH, et al., Defendants.

Civ. A. No. 94–2293.

United States District Court,
District of Columbia.

July 28, 1995.

Robert L. Bell, Washington, DC, for plaintiff.

Amy Sanborn Owen, Miles & Stockbridge, Fairfax, VA, Timothy Battle, Battle & Battle, Alexandria, VA, for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Defendants in this action have filed several motions to dismiss or, in the alternative, for summary judgment. We treat them as motions for summary judgment because we consider material outside the pleadings. Upon

consideration of the matter, the Court concludes that plaintiff's claims are not actionable. Accordingly, defendants' motions for summary judgment are granted.

## I. Background

A well-known sports coach, and later commentator, once said "if I were smart enough to know what I'd do two weeks from now, I'd be smart enough to be a sportswriter."[1] The statements at issue here involve an even longer time frame and center around a sportswriter's preseason attempt to predict the likely contenders for the 1992–1993 women's college basketball championship. Plaintiff Marian E. Washington is the long-time coach of the Kansas Jayhawks women's team. The parties agree that plaintiff is a prominent member of the coaching community.[2] Plaintiff's claims arise from a brief paragraph in "Dick Vitale's 1993–94 College Basketball Preview" magazine (hereafter "Preview"). Defendant Vitale's Ex. A, p. 1. Defendant Joseph C. Smith, president of defendant Women's Basketball News Service ("WBNS"), agreed to write the Preview's women's basketball section. Smith allegedly made the following negative statement concerning plaintiff's chances in the 1993–1994 season:

> Talk about talent, the Jayhawks are loaded with Angela Aycock and Charisse Sampson leading the way. But playing to their ability is usually sabotaged by suspect coaching. This season should prove no different.

Complaint ¶ 61. The remaining defendants[3] are accused of "maliciously and recklessly us[ing] the defamatory statements … from Defendants Smith and [WBNS] to formulate defamatory statements that were knowingly false" that were printed in the Preview.

Complaint ¶ 62. What appeared on page 137 of the Preview is the following:

**KANSAS**

> The Jayhawks are loaded with talent, with swingman Angela Aycock and guard Charisse Sampson leading the list. But coach Marian Washington usually finds a way to screw things up. This season will be no different.

Defendant Vitale's Ex. A, p. 6.

Plaintiff claims that the allegedly defamatory statements created the misleading inference that she is an incompetent coach. She is suing defendants for defamation, invasion of privacy, and intentional infliction of emotional distress. In addition, plaintiff is suing defendant Smith on a second count of intentional infliction of emotional distress because Smith allegedly maintains a "Hit List" of women basketball coaches in an attempt to "drive women basketball coaches from the coaching profession in order that they may be replaced by male coaches." Complaint ¶¶ 95, 97. Defendants counter with various arguments favoring dismissal. The Court need address only the First Amendment issues for purposes of this motion.

## II. Analysis

### A. Standard of Review

Fed.R.Civ.P. 56(c) permits a court to grant summary judgment where, as is the case here, the evidence in the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ Whether a statement is capable of conveying a defamatory meaning is a threshold question for the Court to determine as a matter of law. *Tavoulareas v. Piro*, 817 F.2d 762, 779–80 (D.C.Cir.1987) (*en banc*),

---

**1.** John Madden, quoted in J. Parietti, *The Greatest Sports Excuses, Alibis, and Explanations* 245 (1990).

**2.** At the time the instant controversy arose, plaintiff had served twenty-one years at Kansas, during which the Jayhawks had a winning percentage of .604 in conference play, and had attended five NCAA Tournaments. She is a former president of the Black Coaches Association.

**3.** Defendant Dick Vitale is a commentator and a former college and professional basketball coach. Defendants Ken Leiker and Raymond Levy, respectively the editor-in-chief and publisher of the Preview, contracted with Vitale for the right to use his name and, according to plaintiff, his editorial skills. Also sued were the Preview and InfoSport, Inc., dba Preview Publications. The Court dismissed the Preview as a defendant pursuant to Local Rule 211. *See* March 23, 1995 order.

*cert. denied,* 484 U.S. 870, 108 S.Ct. 200, 98 L.Ed.2d 151 (1987). It is then for the jury to determine by a preponderance of the evidence whether the communication was in fact so understood by its recipient. *Moldea v. New York Times Co.,* 15 F.3d 1137, 1142 (*"Moldea I"*), *modified on other grounds,* 22 F.3d 310 (D.C.Cir.1994) (*"Moldea II"*), *cert. denied,* — U.S. ——, 115 S.Ct. 202, 130 L.Ed.2d 133 (1994). We consider whether as a matter of law defendant Smith's statement[4] and the statement contained in the Preview are actionable.

## B. *Defamation and Opinion*

Under District of Columbia law, a statement is defamatory "if it tends to injure plaintiff in his trade, profession, or community standing, or lower him in the estimation of the community." *Moldea I,* 15 F.3d at 1142 (citing *Vereen v. Clayborne,* 623 A.2d 1190, 1195 n. 3 (D.C.1993)). The straightforwardness of this definition belies the difficulty of its application to statements which include substantial doses of opinion. Such is the instant case. It is clear from the contents of the statement that it was intended to offer an opinion both as to the Jayhawks' potential for the upcoming 1993–1994 season, and as to Coach Washington's abilities.

■ There is no blanket First Amendment immunization for such opinion statements. *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18–19, 110 S.Ct. 2695, 2705–06, 111 L.Ed.2d 1 (1990). A statement of fact is not shielded from an action for defamation when prefaced with the words "in my opinion." However, a statement is not actionable if it relates to a matter of public concern and it is clear that the declarant is expressing a subjective view, an interpretation, a theory, conjecture, surmise, or hyperbole, rather than claiming to be in possession of objectively verifiable facts. *Id.* at 17–21, 110 S.Ct. at 2704–07; *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir.1993). Even if the opinion does rely on facts either supplied in the statement or implied therein, the state-

ment is immunized if the parties cannot prove the statement is either true or false on the basis of objective evidence. 497 U.S. at 21, 110 S.Ct. at 2707.

■ Our inquiry, however, does not end there. The D.C. Circuit instructs us that the First Amendment mandates latitude for interpretation when a writer is evaluating or giving an account of inherently ambiguous materials or subject matter. *Moldea II,* 22 F.3d at 315; *accord, Phantom Touring, Inc. v. Affiliated Publications,* 953 F.2d 724, 729 n. 9 (1st Cir.), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2942, 119 L.Ed.2d 567 (1992). In the Court of Appeal's view, *Milkovich* did not disavow the importance of context, but merely discounted it in the circumstances of that case. *Moldea II,* 22 F.3d at 314. When the context of the writing is ambiguous, the Court must apply the "supportable interpretation" standard. *Id.* To succeed under this test, plaintiff must show that the statement was "so obviously false" that "no reasonable person could find" that the statement's characterizations were supportable interpretations of the underlying material. *Id.* at 315, 317 (emphasis omitted). Statements are immunized even if a reasonable jury could find that the statements were mischaracterizations. *Id.* at 316.

## C. *Matter of public concern*

■ Courts must exercise care in determining what qualifies as a public concern or controversy.

> Newsworthiness alone will not suffice, for the alleged defamation itself indicates that someone in the press believed the matter deserved media coverage.... If the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy.

*Waldbaum v. Fairchild Publications Inc.,* 627 F.2d 1287, 1296–97 (D.C.Cir.), *cert. denied,* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980). Courts have previously held that certain sporting events are matters of public

---

**4.** Plaintiff's complaint is extremely vague about the context of the first statement allegedly made by Smith. The parties do not make much of this ambiguity, and we do not believe it is relevant for the purposes of this motion. Therefore, we will consider both statements under the same standard, and our discussion of the published statement will apply equally to the earlier statement.

concern even though these events may be of little interest to large segments of the population. *See e.g. Don King Productions, Inc. v. Douglas,* 742 F.Supp. 778, 783 (S.D.N.Y. 1990) (outcome of boxing title fight matter of public concern); *Holt v. Cox Enterprises,* 590 F.Supp. 408, 412 (N.D.Ga.1984) (public concern in traditional rivalry between two college teams). Although women's collegiate athletics have not traditionally garnered the attention received by major men's teams, this disparity is diminishing. The Preview itself notes that the 1993 Women's "Final Four" sold out and brought large television ratings to the network which aired the championship game. Preview, p. 136. Indeed, a LEXIS search for the period at issue in this case revealed a number of stories related to plaintiff and several other newspaper stories related to the Kansas' women's team. We conclude that the success of the Jayhawks, a major Division I team, is a matter of public concern.

### D. *Milkovich standard*

#### (1). *Implication of underlying facts*

Under *Milkovich,* a statement of opinion may be defamatory if the speaker implies that the statement is based on undisclosed facts.[5]

> If a speaker says, "In my opinion John Jones is a liar," he implies knowledge of facts which lead to the conclusion that Jones told an untruth.... Simply couching such statements in terms of opinion does not dispel these implications.

*Id.* at 18–19, 110 S.Ct. at 2705–06. In the case at bar, the statement on page 137 of the Preview stated "coach Marian Washington usually finds a way to screw things up."

Plaintiff contends that this statement implies knowledge of facts relating to past basketball seasons upon which the reviewer reached his conclusion that Washington "usually finds a way to screw things up." Regardless of whether this comment is couched as opinion, plaintiff believes that the implication that she is a bad coach is as serious and potentially damaging as the statement "John Jones is a liar." We assume for purposes of this motion that plaintiff's arguments are correct and her claim meets the first requirement of *Milkovich.*[6]

#### (2). *Whether the opinion's falsity can be established by objective evidence*

■ We now consider whether objective evidence can prove the falsity of the opinions at issue. As an initial matter, we must determine whether, in context, the statement which appeared in the Preview concerned the type of ambiguous material or subject matter to which *Moldea II* requires us to apply the "supportable interpretation" standard. In *Phantom Touring,* the First Circuit concluded that a regularly run theater column is "a type of article generally known to contain more opinionated writing than the typical news report." 953 F.2d at 729. The Court noted that the structure and tone of the language used reinforced the subjective design of the article. *Id.* ("exasperated language indicated that his comments represented his personal appraisal of the factual information"). Similarly, in *Moldea II,* the D.C. Circuit concluded that in the context of a book review, a critic "must be given the constitutional 'breathing space' appropriate to the genre." 22 F.3d at 315 (citing *New York Times Co. v. Sullivan,* 376 U.S. 254,

---

5. To this extent at least, *Milkovich* follows section 566 of the Restatement (second) of Torts.

6. In fact, we have serious doubts that the statements can reasonably be interpreted as anything but hyperbole. *Milkovich* reaffirmed the principle that the First Amendment protects "rhetorical hyperbole" and other types of "imaginative expression" used to enliven prose. *Phantom Touring,* 953 F.2d at 727; *Greenbelt Cooperative Publ. Ass'n, Inc. v. Bresler,* 398 U.S. 6, 14, 90 S.Ct. 1537, 1541–42, 26 L.Ed.2d 6 (1970) (word "blackmail" not actionable in context); *Letter Carriers v. Austin,* 418 U.S. 264, 284–86, 94 S.Ct.

2770, 2781–82, 41 L.Ed.2d 745 (1984) (word "traitor" in literary definition not actionable when used in "loose figurative sense"). Indeed, a strong case can be made that the perhaps intemperate statement concerning plaintiff's ability to "screw things up" lacks the precision necessary to support a defamation claim. This is also true of the earlier comments concerning "suspect coaching." *See Phantom Touring,* 953 F.2d at 728 (terms "fake" and "phoney" are unprovable); *McCabe v. Rattiner,* 814 F.2d 839, 842 (1st Cir.1987) (word "scam" too ambiguous to be proven true or false).

272, 84 S.Ct. 710, 721–22, 11 L.Ed.2d 686 (1964)); *see also Partington v. Bugliosi*, 56 F.3d 1147, 1154–55 (9th Cir.1995) (tenor of made-for-television "docudrama" negates impression that statements represent false assertion of objective facts).

We conclude that readers of a sports preview magazine understand that a considerable portion of the magazine's content is subjective opinion. *C.f. Ollman v. Evans*, 750 F.2d 970, 984 (D.C.Cir.1984) ("Courts have ... considered the influence that ... well-established genres of writing will have on the average reader"). The statement contained in the Preview must be viewed in this context. A sports preview magazine deals with such inherently ambiguous material that the Court must allow wide latitude for interpretation. Plaintiff can recover only if she meets the "supportable interpretation" standard adopted by this Circuit.

Even in situations where the general tenor of the work suggests that the author is expressing personal opinion, a particular statement of opinion may fall outside the protections of the First Amendment if it implies a false assertion of objective fact. *Partington*, 56 F.3d at 1155. Plaintiff argues that the statement about her meets this description. We disagree. To succeed, plaintiff must show that *no* reasonable person could find that the characterizations were supportable interpretations of the underlying facts. This plaintiff cannot do.

Some of the underlying facts are available elsewhere in the Preview. For example, it is apparent from the listing on page 158 that Kansas has not made the women's "Final Four" since before 1972 (plaintiff was named head coach in 1973), even though the Jayhawks made the Tournament five times. The statement that Kansas' team being "loaded with talent" appears born out by a separate chart listing individual and team statistics from the previous season. *See* Preview, p. 159. Kansas ranks in two "team leaders" categories and has two "individual leaders." Despite this, the 1992–93 season ended for the Jayhawks with a first round loss in the NCAA Women's Tournament. On the other hand, there is substantial evidence indicating that plaintiff is an excellent coach.

The Jayhawks have won several tournaments over the years and been ranked nationally. Complaint ¶¶ 31–42. Plaintiff's total wins rank among the top thirty in victories for active Division I coaches. Complaint ¶ 38.

Reasonable minds can interpret the statistics differently. The mere fact that plaintiff's record is open to reasonable interpretation is fatal to plaintiff's case. This ambiguity indicates why the Court cannot adopt plaintiff's position. How many wins does a coach need before a writer or fan is prohibited from criticizing the coach's ability? Do commentators know the "magic number" so they can ascertain when their opinions have become actionable? Does a team have to lose a certain number of games before they can be criticized? In reality, plaintiff's winning statistics may provide a basis for disputing or supporting the writer's opinion. Equally troubling is how a jury would consider evidence of plaintiff's ability to "screw things up." Would the jury be required to watch tapes of the Jayhawks and determine whether Coach Washington's decisions led to the team's defeat? As the Court in *Moldea II* noted, "Sports columnists frequently offer intemperate denunciations of coaches' play-calling or strategy, and readers know this and presumably take such railings with a grain of salt." 22 F.3d at 313. We believe this is equally true of the statements at issue here.

### E. *Additional Claims*

Plaintiff also seeks relief for invasion of privacy and two counts of intentional infliction of emotional distress. It is well settled law that a plaintiff "may not use related causes of action to avoid the constitutional requisites of a defamation claim." *Moldea II* 22 F.3d at 319–20 (citing *Cohen v. Cowles Media Co.*, 501 U.S. 663, 671, 111 S.Ct. 2513, 2519, 115 L.Ed.2d 586 (1991)); *Hustler Magazine v. Falwell*, 485 U.S. 46, 56, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988) (claim for intentional infliction of emotional distress based on publication of a cartoon parody must meet requirements for libel action); *Brown v. Hearst Corp.*, 862 F.Supp. 622, 631 (D.Mass.1994), *aff'd*, 54 F.3d 21 (1st Cir.1995) (invasion of privacy claim fails when informa-

tion is in public domain). Plaintiff's claim under these counts must also fail.

### III. *Conclusion*

The First Amendment protects the statement at issue here and prevents plaintiff from continuing with her action. We recognize that plaintiff is deeply offended by these comments and considers them wholly inaccurate. In evaluating these matters, however, the Court must "err on the side of nonactionability." *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d 1287, 1292 (D.C.Cir.), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). Defendants' motions for summary judgment are granted.