**JEFFERSON COUNTY SCHOOL DISTRICT NO. R–1,**
Plaintiff,

v.

**MOODY'S INVESTOR'S SERVICES, INC., Defendant.**

**Civ. A. No. 95–WY–2649–WD.**

United States District Court, D. Colorado.

April 4, 1997.

Gerald A. Caplan, Alexander Halpern, William Stuart Stuller, Caplan & Earnest, Boulder, CO; for plaintiff.

Jeffrey A. Chase, Jacobs, Chase, Frick, Kleinkopf & Kelley LLC, Denver, CO, Robert M. Callagy, Satterlee, Stephens, Burke & Burke L.L.P., New York, NY, for defendant.

## ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO FILE SECOND AMENDED COMPLAINT

DOWNES, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) or, in the Alternative, for Summary Judgment Pursuant to F.R.C.P. 56 and the Plaintiff's Motion for Leave to File Second Amended Complaint. The Court, having carefully considered the materials submitted in support of the motions and the responses thereto, having heard oral argument of counsel and being otherwise fully advised in the premises, FINDS and ORDERS as follows:

## BACKGROUND

In September, 1993, the Plaintiff, Jefferson County School District, determined to refinance a portion of its bonded indebtedness and proceeded to market its 1993 Refunding Bonds in the total principal amount of $110,-325,000. (Am.Compl. ¶ 7.) The School District retained two bond-rating agencies, Standard & Poor's and Fitch Investors Service, to rate the bonds. *Id.* ¶ 9. Moody's is also a bond rating agency engaged in the business of evaluating or "rating" for a fee the creditworthiness of bond and other debt issues of, *inter alia,* governmental subdivisions such as and including the School District. Moody's also provides informational services, such as ratings reports, for a fee to subscribing investors and others. *Id.* ¶ 6. The School District did not retain Moody's to rate the 1993 Refunding Bonds and no information regarding the current financial condition of the School District was provided to Moody's. *Id.* ¶ 10. However, Moody's had an outstanding rating on the School District's Series 1985C Bonds. *Id.* ¶ 11.

The 1993 Refunding Bonds were brought to market on October 20, 1993. Sales progressed successfully and within a short period of time subscriptions for the purchase of substantially all of the issue had been received. *Id.* ¶ 24. However, about two hours into the sales period, Moody's issued a statement in its "Rating News" (the "Article") stating that, although it had not been asked to rate the 1993 Refunding Bonds, it intended to assign a rating to the issue subsequent to the sale. *Id.* ¶ 15. Although Plaintiff bases its claims on only a portion of the Article, the Article's second paragraph, which includes the portion Plaintiff relies on, reads in full:

> **The outlook on the district's general obligation debt is negative, reflecting the district's ongoing financial pressures due in part to the state's past underfunding of the school finance act as well as legal uncertainties and fiscal constraints under Amendment 1.** Among other provisions, Amendment 1, which was approved in a November 1992 state referendum, requires advance voter approval of property tax increases, without distinction between operating levies and levies for servicing general obligation bonds. A lawsuit, to which the district is not a party, filed in Arapahoe County District Court, challenges another school district's increase in property tax rates for general obligation bond debt service without an authorizing election. The suit is pending, and could have statewide implications. Due to the uncertainty of whether voter approval is required to increase tax rates to support debt service, Moody's is currently treating general obligation bonds, for <u>analytical</u> purposes, as limited tax obligations with appropriate rating distinctions.

(Ex. 4) (underlined emphasis in original) (bold emphasis added). Plaintiff bases its claims on the first sentence of that paragraph. (Am.Compl. ¶ 15.)

The first page of the Article bears the following "Legal Note":

> The information herein has been obtained from sources believed to be accurate and reliable, but because of the possibility of human and mechanical error, its accuracy or completeness is not guaranteed. **Moody's ratings are opinions, not recommendations to buy or sell;** accordingly, investors are always encouraged to weigh ratings solely as one factor in an investment decision.

(Ex. 4) (emphasis added). Plaintiff asserts that at the time this statement was made, the most recent financial information that had been provided to Moody's was over one year old. (Am.Compl. ¶ 16.) Plaintiff alleges that Moody's knew or should have known that the statement would be understood to mean that the bonds would be downgraded in rating and that, given Moody's influential position in the bond market, such a rating would materially impair the marketability and value of the 1993 Refunding Bonds. *Id.* ¶ 19. Plaintiff further alleges that Moody's statement was materially false, misleading and derogatory in that it states, implies, and conveys the impression that the School District's financial condition was not credit-worthy and that the statement was based on current information concerning the School District and an analysis sufficient to support that conclusion. *Id.* ¶ 18.

Within minutes after the release of Moody's "Rating News," the Dow Jones Capital Market Reports reported Moody's "outlook" on the School District's general obligation debt. Shortly thereafter, Plaintiff asserts that orders to purchase the 1993 Refunding Bonds stopped and several existing orders were canceled. The School District was then forced to reprice its bonds at a higher interest rate in order to complete the sale. Plaintiff claims damages for the difference between the financial benefit the School District realized from the sale of the bonds at the adjusted price and what it would have realized if the bond sale had been completed at the original offering price.

Plaintiff filed the instant action in October of 1995 alleging causes of action for intentional interference with contractual relations, intentional interference with prospective contractual relations, and publication of injurious falsehood. Defendant subsequently filed a motion to dismiss or, in the alternative, for summary judgment arguing that Plaintiff's claims must fail because the statement complained of consists of constitutionally protected opinion. On May 2, 1996, the Court heard oral argument on the Defendant's motion to dismiss. On May 9, 1996, the Court issued a brief oral ruling granting the Defendant's motion to dismiss and advised counsel that a more extensive written order would follow. At the conclusion of the hearing, this Court became aware that Plaintiff had filed a motion for leave to file a second amended complaint on April 30, 1996, seeking to add two additional claims for relief based on alleged violations of the Sherman Act. The Court then advised counsel that, although its ruling on the motion to dismiss as to the original three claims for relief would stand as stated on the record, a single order would be issued subsequent to the briefing and argument on the motion to amend the complaint.

### DISCUSSION

■ The standard of review applied to a motion to dismiss for failure to state a claim is well-established. This Court must accept as true the Plaintiff's well-pleaded factual allegations and construe them in a light most favorable to plaintiff. *Maez v. Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1496 (10th Cir.1995). Dismissal for failure to state a claim is appropriate only if the plaintiff can

prove no set of facts in support of his claims that would entitle him to relief. *Id.* The Tenth Circuit Court of Appeals has stated that, at this stage, this Court's "function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiffs complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). The Federal Rules of Civil Procedure create a strong presumption against rejecting pleadings for failure to state a claim. *Maez*, 54 F.3d at 1496.

### A. MOTION TO DISMISS

■ In *Henderson v. Times Mirror Co.*, 669 F.Supp. 356 (D.Colo.1987), Judge Carrigan held that the plaintiffs claim of intentional interference with contractual relations could not be predicated on defendant's expressions of opinion protected by the First Amendment and, therefore, that claim was dismissed. Judge Carrigan relied on *Redco Corp. v. CBS, Inc.*, 758 F.2d 970 (3rd Cir. 1985), wherein the Third Circuit Court of Appeals "held that since defendants could not be liable for defamation arising out of their statements of opinion, the intentional interference with contractual relations claim was likewise not actionable because there was no basis for finding that their actions were improper." *Henderson*, 669 F.Supp. at 362. *See also Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir.1990) (claims for tortious interference with business relationships "are subject to the same first amendment requirements that govern actions for defamation").

■ Similarly, in *Teilhaber Manufacturing Co. v. Unarco Materials Storage*, 791 P.2d 1164 (Colo.App.1989), the Colorado Court of Appeals found that recovery under a product disparagement (injurious falsehood) theory would be proper in that case "unless the statements in the report fall within the ambit of First Amendment protection." *Id.* at 1167. "The constitutional protections afforded a defendant in a defamation action are applicable to a defendant in a product disparagement action.... Thus, in general, a statement of opinion, as opposed to a state-

ment of fact, will be protected expression under the First Amendment." *Id. See also Auvil v. CBS 60 Minutes,* 800 F.Supp. 928, 933 (E.D.Wash.1992) (claim for product disparagement subject to the same first amendment requirements that govern actions for defamation); *X–Tra Art, Inc. v. Consumer Union of the United States,* 48 F.3d 1230 (Table), 1995 WL 100613 (9th Cir.1995) (rules limiting media defendants' liability for defamatory publications "apply not only to defamation actions, but to 'all claims whose gravamen is the alleged injurious falsehood of a statement' "). However, the *Teilhaber* court further recognized that not all forms of opinion are entitled to such protection. In light of the foregoing, the issue before the Court is whether the Defendant's statements constitute mere expressions of opinion protected by the First Amendment.

Plaintiffs attempt to dismiss the foregoing cases in light of the Supreme Court's holding in *Cohen v. Cowles Media Co.,* 501 U.S. 663, 111 S.Ct. 2513, 115 L.Ed.2d 586 (1991) is not persuasive. The *Cohen* case involved promises by the defendant giving rise to a breach of contract/promissory estoppel action independent of the First Amendment issue. Here, Plaintiffs claims are based solely on the Defendant's alleged "defamatory" publication. As the *Cohen* Court itself held, a plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim. *See also Moldea v. New York Times Co.,* 22 F.3d 310 (D.C.Cir.1994); *Washington v. Smith,* 893 F.Supp. 60 (D.D.C.1995).

In determining whether an allegedly "defamatory" statement is constitutionally privileged, "a court must determine whether the statement is one 'of opinion relating to matters of public concern which does not contain a provably false factual connotation,' or which 'cannot reasonably [b]e interpreted as stating actual facts about an individual.' " *NBC Subsidiary (KCNC–TV), Inc. v. Living Will Center,* 879 P.2d 6, 11 (Colo.1994) (quoting *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990)). "In making this inquiry, relevant considerations include the phrasing of the statement, the context in which it appears, the medium through which it is disseminated, the circumstances surrounding its publica-

tion, and a determination of whether the statement implies the existence of undisclosed facts which support it." *Living Will Center,* 879 P.2d at 11. Whether allegedly defamatory statements are constitutionally privileged is a question of law. *Id.*

Applying these standards to the statement at issue here, the Court finds that the statement is one of opinion relating to matters of public concern and the terms "outlook" and "negative," in consideration with the overall context of the Article, do not contain a provably false factual connotation. And while the statements as to the School District's "ongoing financial pressures" might be interpreted as stating actual facts, Plaintiff has not alleged any facts supporting a finding that such statements are false. The Court is also not persuaded by the Plaintiffs assertion, based on a contorted interpretation of the plain language, that the subject statement implies the existence of undisclosed supporting facts. Rather, the statement explicitly sets forth the basis of Moody's "negative outlook" as being the "district's ongoing financial pressures" which were, in Moody's opinion, due to the "state's past underfunding of the school finance act" and the "legal uncertainties and fiscal constraints under Amendment 1." Furthermore, the first page of the Article explicitly states that the accuracy and completeness of the information contained therein is not guaranteed and that "Moody's ratings are opinions." Accordingly, the Court finds that the statement issued by Moody's, which is the basis of Plaintiff's complaint, is an expression of opinion protected by the First Amendment. Therefore, Defendant's motion to dismiss should be granted.

**B. Motion for Leave to File Second Amended Complaint**

Plaintiff seeks to amend its complaint to add two new claims for relief for monopolization and attempted monopolization based on alleged violations of Section 2 of the Sherman Act, 15 U.S.C. § 2. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." The decision whether to grant a

motion to amend the pleadings is generally left to the sound discretion of the district court. *Schepp v. Fremont County, Wyoming*, 900 F.2d 1448, 1451 (10th Cir.1990). This Court may properly deny a motion to amend if the proposed amendment cannot withstand a motion to dismiss or otherwise fails to state a claim. *Id.* (citing, e.g., *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (futility of amendment adequate justification to refuse to grant leave to amend)).

In its proposed Second Amended Complaint, Plaintiff alleges that by publishing and threatening to publish "unsolicited ratings," Defendant has engaged in anticompetitive conduct with the specific intent and purpose of foreclosing competition from other providers of credit rating services. (Second Am. Compl. ¶¶ 53, 61.) In light of the Court's findings on the motion to dismiss, the core issue before the Court on Plaintiff's motion to amend is whether constitutionally protected expression of opinion, without more, is immune from Sherman Act liability. The Court did not locate, nor did the parties cite to, any circuit or Supreme Court case directly addressing this issue. However, two cases decided by the Supreme Court have established immunity from the antitrust laws for solicitation of government action, irrespective of anti-competitive intent. *Eastern Railroad Presidents Conference v. Noerr Motor Freight Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

■ In *Noerr*, the Supreme Court held that the "Sherman Act does not apply to ... activities compris[ing] mere solicitation of governmental action with respect to the passage and enforcement of laws." *Noerr*, 365 U.S. at 138, 81 S.Ct. at 530. The *Noerr* Court stated, "The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms." *Id.* The Court further stated:

All of the considerations that have led us to the conclusion that the Act does not apply to mere group solicitation of governmental action are equally applicable in spite of the [additional factor that the sole purpose in seeking to influence the passage and enforcement of laws was to eliminate competition]. The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so.... A construction of the Sherman Act that would disqualify people from taking a public position on matters in which they are financially interested would thus deprive the government of a valuable source of information and, at the same time, deprive the people of their right to petition in the very instances in which that right may be of the most importance to them. We reject such a construction of the Act and hold that, at lease insofar as the [defendants'] campaign was directed toward obtaining governmental action, its legality was not at all affected by any anticompetitive purpose it may have had.

*Id.* at 139–40, 81 S.Ct. at 530–31.

Based on its holding in *Noerr*, the Supreme Court in *Pennington* held that "[j]oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act." *Pennington*, 381 U.S. at 669, 85 S.Ct. at 1593. In a subsequent case, the Supreme Court, recognizing its previous holdings in *Noerr* and *Pennington*, concluded that "it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-a-vis their competitors." *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11, 92 S.Ct. 609, 612, 30 L.Ed.2d 642 (1972).[1]

---

1. Although the Supreme Court has carved out what is known as the "sham exception" to the *Noerr–Pennington* doctrine, *see California Motor Transport*, 404 U.S. at 511, 92 S.Ct. at 612, Plaintiff has not properly plead any facts sufficient to support applicability of the exception here, nor has Plaintiff even argued for its applicability here.

■ Thus, the primary basis for the *"Noerr–Pennington"* exemption to antitrust liability rests on fundamental First Amendment freedoms. In *McDonald v. Smith*, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985), the Supreme Court recognized that the "Petition Clause ... was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble.... These First Amendment rights are inseparable ... and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions." *Id.* at 485, 105 S.Ct. at 2791. It follows, then, that the mere expression of opinion that is protected by the First Amendment is likewise entitled to immunity from antitrust liability.

This view follows that which was taken by Judge Ditter in the recent case of *Massachusetts School of Law v. American Bar Ass'n*, 937 F.Supp. 435 (E.D.Pa.1996), *aff'd on other grounds*, 107 F.3d 1026 (3rd Cir.1997). The court held that even if the injury alleged was not incidental to *Noerr*-protected conduct, the antitrust claims would still fail since the defendant did nothing more than express its opinion which is speech protected by the First Amendment and not conduct for which there can be antitrust liability. In that case, plaintiff Massachusetts School of Law ("MSL") brought antitrust claims against the American Bar Association ("ABA") arising out of the ABA's refusal to grant accreditation to MSL. In reaching its holding, the Court reasoned:

> It is axiomatic that the First Amendment protects speech, not action. Thus, the speech component involved in ABA's promulgation of standards is protected by the First Amendment and, because the Constitution trumps the Sherman Act, this speech component cannot be the basis for antitrust liability. However, any conduct associated with the standards is not entitled to First Amendment protection. Put

differently, the conduct forming the basis of a restraint of trade or a monopolization is outside the First Amendment's reach. This flows logically from section 1 of the Sherman Act which requires "concerted action that unreasonably restrains trade."

. . . .

> When an association merely states its position, and a company is stigmatized because of that statement, there is no basis for antitrust liability. ABA's constitutionally protected expression of its views and any resulting stigma that MSL suffers do not amount to ABA conduct on which to establish potential antitrust liability.... If stigma results from simple expression, that stigma is incidental to the speech and cannot be the basis for antitrust liability.... Antitrust laws do not exist to stifle the effects of speech.

*Id.* at 443–44. Judge Ditter ultimately concluded that the publication of an association's views, without more, is protected speech and does not violate the Sherman Act. "Only ... conduct can trigger antitrust liability. Abstract stigma that flows from the publication of speech protected by the First Amendment is not enough." *Id.* at 445. Although not directly on point, the facts in *MSL v. ABA* are sufficiently analogous to the case at bar to make that court's analysis and reasoning applicable here.

In this case, the proposed Second Amended Complaint contains no allegations that Moody's engaged in any conduct with respect to Plaintiff School District except the publication of an unfavorable opinion. The alleged "conduct" of publishing an unsolicited rating with respect to the School District's bond issue cannot be separated or distinguished from what this Court has already found to be a constitutionally protected expression of opinion. The cases relied on by Plaintiff are inapposite in that they all involve some form of "conduct" beyond the mere expression of opinion protected by the First Amendment.[2]

---

**2.** *See Federal Trade Comm'n v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 110 S.Ct. 768, 107 L.Ed.2d 851 (1990) (involving concerted refusal by CJA lawyers to accept any further assignments until they received an increase in their compensation); *Lorain Journal Co. v. U.S.*, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951) (involving dominant newspaper's refusal to ac-

cept advertising from anyone who advertised on a competing radio station); and *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988) (trade association's members' agreement to exclude a particular product from certification was an implicit agreement not to trade in that type of product).

Here, the proposed Second Amended Complaint contains no allegations that Moody's engaged in "conduct" triggering antitrust liability, i.e. conduct distinct from the publication of an unsolicited rating. Moody's merely expressed its opinion on the outlook for the bonds being issued by the School District. Such expression is protected under the First Amendment and cannot be the basis for Sherman Act liability.[3]

### CONCLUSION

The bond market depends in large measure upon the free, open exchange of information concerning bond issues and the First Amendment is ultimately the best guarantor of the integrity of the bond rating system. The Court recognizes that this ruling works a harsh result upon the Plaintiff, yet this harm is vastly outweighed by the calamity which could result if bond rating firms could be muzzled into silence by the improvident application of the Sherman Anti–Trust Act to their bond rating endeavors.

THEREFORE, it is hereby

**ORDERED** that Defendant's Motion to Dismiss is GRANTED; it is further

**ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint is DENIED; it is further

**ORDERED** that Plaintiff's Motion to Reconsider or, in the Alternative, to Enter Final Judgment under Fed.R.Civ.P. 54(b) is DENIED.

---

3. In light of this ruling, it is unnecessary to address Moody's additional argument that Plaintiff lacks standing to bring the antitrust claims alleged in the proposed amended complaint.